IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-03295-GPG-KAS

DONALD HARPER,

    Plaintiff,

v.

STARBUCKS CORPORATION,

    Defendant.

---

**MOTION FOR SANCTIONS**

---

Pursuant to Fed. R. Civ. P. 37, Defendant Starbucks Corporation, by and through undersigned counsel, hereby submits this Motion for Sanctions and, in support, states as follows.

**CONFERRAL**

On May 8, 2025, a hearing was held on a discovery dispute that forms the basis of this Motion for Sanctions. At the hearing, the Court directed Starbucks to file its Motion for Sanctions on or before May 23, 2025.

**INTRODUCTION**

While sitting outside a Starbucks on August 23, 2019, Plaintiff was struck in the left collarbone by an umbrella that had blown out of its stand. Starbucks has admitted liability, and the issues for trial are causation and damages. Plaintiff claims the incident resulted in injuries to his left shoulder, arm, and elbow, including nerve injuries. During

discovery, Plaintiff produced his medical records, which Starbucks reviewed, provided to its expert witness, utilized in depositions, and relied upon in its summary judgment motion. Initial disclosures were served in April 2022, the first deposition was taken in January 2023, Starbucks disclosed its expert witness in December 2023, discovery closed in June 2024, and the Court denied Starbucks Corporation's summary judgment motion in September 2024. Trial was set for June 2025.

On January 9, 2025, Plaintiff provided 234 pages of medical records. On April 21, 2025, Plaintiff provided 870 pages of medical records. Included in these productions were medical records dating back to 2003 that had not been previously produced. These previously unproduced medical records contained significant new information, including Plaintiff's prior history with the same symptoms and injuries for which he now seeks damages and Plaintiff's current treatment that would eliminate much of the future damages he seeks. Had these records been timely produced, they would have fundamentally altered how Starbucks conducted both discovery and its pre-trial strategy. Additional doctors would have been deposed, Starbucks Corporation's expert witness would have additional records to inform his opinion, those already deposed would have been confronted with a more robust expert report and records that conflict with their testimony, and the outcome of Starbucks Corporation's summary judgment motion— denied based on a disputed fact—may have been different.

On May 8, 2025, the Court held a discovery hearing regarding Plaintiff's untimely production and the prejudice it caused to Starbucks. In an attempt to cure the prejudice caused by Plaintiff's untimely disclosure, the Court reopened discovery to permit

Starbucks to reopen three depositions, which are limited in scope to the untimely produced documents, and to take one new deposition, which is not limited in scope. The Court also authorized Starbucks to file a new summary judgment motion should additional discovery bring new information to light. Finally, Starbucks was directed to file the instant Motion for Sanctions.

Starbucks now requests that the Court order Plaintiff to pay the reasonable expenses, including attorney's fees, caused by his untimely disclosure. Specifically, Starbucks requests that Plaintiff be ordered to pay (1) attorney's fees and costs incurred to take the additional deposition testimony, (2) costs incurred to obtain an expedited supplemental expert report based on the untimely produced medical records, and (3) attorney's fees and costs incurred to file a new summary judgment motion.

## BACKGROUND

Plaintiff asserts injuries to his left shoulder, arm, and elbow arising from the incident, including nerve pain and resulting impairment or difficulties in his ability to use his left arm. Plaintiff has a long medical history. And, because Plaintiff has refused to sign a HIPAA release, Starbucks cannot independently seek Plaintiff's medical records and is wholly dependent on Plaintiff to obtain such records. Plaintiff injected his physical condition into this case when he filed this lawsuit, and Plaintiff had an obligation to collect these documents when he commenced this lawsuit and to timely produce them during the discovery period of this case. Instead, Plaintiff collected these medical records after his doctors were deposed and after the close of discovery, just months before the trial.

The untimely produced medical records are important to Starbucks Corporation's defense in this case, as they set forth other unrelated causes attributable to Plaintiff's nerve symptoms. The records demonstrate that, contrary to his deposition testimony, Plaintiff has a history of significant left arm dysfunction and radiculopathy.[1] The following are examples of new information contained in the untimely disclosed medical records.[2]

Reason for the 2003 Spinal Fusion. In April 2022, Plaintiff produced 8 pages of medical records from Green Valley Neurology. From these records, Starbucks was aware that Plaintiff had a spinal fusion in 2003; however, it was not aware of why he had the spinal fusion. In January 2025, Plaintiff produced an additional 71 pages of medical records from Green Valley Neurology. From these records, Starbucks learned that the reason for the spinal fusion was a cervical spine injury that was causing nerve difficulties in his left arm. (*See* Excerpts from Green Valley Neurology Records, at GVNR14 (attached as **Exhibit A**) ("He did have a C5-C6 fusion done in 2003, with good result. His recollection is that he had severe neck pain and left arm difficulties at that time.").)

Tingling in Left Arm in 2013. Dr. Joel Dean is a neurologist and one of Plaintiff's treating physicians. Starbucks had the records of Plaintiff's visit with Dr. Dean in 2022, after the umbrella incident, wherein his opinion overlapped with other providers in the case. Starbucks did not have the records of Plaintiff's visit with Dr. Dean in 2013, six years

---

[1] "Radiculopathy" occurs when a nerve is compressed, and its symptoms frequently include pain, weakness, numbness and tingling perceived by a patient in an extremity.

[2] For a more thorough explanation, see Starbucks Corporation's supplemental expert report detailing the contents of the untimely produced medical records and their importance. (Attached as **Exhibit B**, at 2-6).

before the incident in question. Plaintiff saw Dr. Dean after "he fell about 10-15 feet off of a roof, landing on his head on some wooden stairs and a deck. He had witnessed loss of consciousness, for perhaps three or four minutes. He also sustained a left shoulder injury." (Ex. A, at GVNR14.) Those records state that Plaintiff experienced neck pain and "some tingling in the left arm intermittently" after his fall off the roof, which is consistent with a cervical nerve injury and resultant radiculopathy in the left arm. (*Id.*) The records also explain that the fall off the roof injured Plaintiff's left shoulder, neck, and low back. (*See* Ex. A, at GVNR43.)

Prescribed Medication for 2015 Nerve Pain. Until receiving these medical records on April 21, 2025, Starbucks was not aware that, in 2015, Plaintiff was prescribed amitriptyline "for sleep and *nerve pain*." (Excerpts from VA Records, at VAR988 (emphasis added) (attached as **Exhibit C**).)

Numbness in His Left Fingers Stemming from Neck in 2016. According to additional medical records received on April 21, 2025, Plaintiff reported an incident in 2016 where "he turned his head to the left, he had numbness in the whole left side of his tongue," and he had numbness in his left fingers. (Ex. C, at VAR940.)

Plaintiff's current treatment and new recommended future treatment are also included in the untimely disclosed medical records, and they demonstrate that Plaintiff may undergo an ulnar nerve revision surgery. Should this surgery be successful, Plaintiff will have no claim for permanent impairment damages.[3]

---

[3] As the instant Motion does not seek monetary sanctions based on Plaintiff's untimely disclosure of the records of his current treatment, this issue is addressed in Starbucks Corporation's Motion to Compel Unredacted Medical Records, filed contemporaneously.

## ARGUMENT

When a party fails to timely disclose information as required by Rule 26, sanctions may be appropriate if the failure was neither substantially justified nor harmless. Fed. R. Civ. P. 37(c)(1). "The imposition of sanctions for abuse of discovery under Fed. R. Civ. P. 37 is a matter within the discretion of the trial court." *Orjias v. Stevenson*, 31 F.3d 995, 1005 (10th Cir. 1994). "Where preclusion of the undisclosed evidence is not a proper sanction, the appropriate alternative sanction should be in keeping with the significance of the violation." *Bush v. Fedex Freight, Inc.*, No. 12-CV-00230-WYD-KLM, 2013 WL 4496391, at *4 (D. Colo. Aug. 22, 2013) (quoting *Trattler v. Citron,* 182 P.3d 674, 683 (Colo. 2008)).

### I. Because Plaintiff's Failure to Timely Disclose His Medical Records Was Neither Substantially Justified nor Harmless, Sanctions Are Appropriate.

When determining whether a failure to disclose was either substantially justified or harmless, the court's discretion is guided by the following factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

<u>Prejudice or Surprise</u>. Starbucks was both prejudiced and surprised by the information contained in Plaintiff's untimely disclosed medical records. The information contained in the untimely disclosed records would have fundamentally altered Starbucks Corporation's discovery strategy. These records indicate that Plaintiff has a history of the same symptoms and injuries for which he now seeks damages. There were multiple

- 6 -

discovery strategies Starbucks would have utilized but was unable to utilize because Starbucks did not have these records.

Starbucks would have confronted Plaintiff during his deposition based on the untimely disclosed medical records. Plaintiff is an admittedly poor record-keeper of his own medical treatment, and his deposition testimony conflicts with the information contained in the untimely disclosed medical records. Without such records, Starbucks had no ability to confront Plaintiff on his conflicting testimony regarding his long, documented history of radiculopathy in his left arm.

Starbucks would have taken the deposition of Dr. Dean. Prior to receiving the untimely disclosed medical records, it did not appear that Dr. Dean played a significant role in Plaintiff's treatment or that he had opinions regarding Plaintiff that were unique to him. Thus, Starbucks did not depose Dr. Dean. The new medical records make clear, however, that Dr. Dean played a much larger role in Plaintiff's medical treatment than Starbucks had previously known and that Dr. Dean likely has unique opinions regarding Plaintiff's injuries and medical treatment. Had Starbucks known that Dr. Dean had treated Plaintiff for left shoulder injuries and nerve injuries six years prior to the incident and then again two and half years after the incident, it would have deposed Dr. Dean.

Starbucks Corporation's expert witness would have included the other causes attributable to Plaintiff's nerve problems in his initial expert report, as he did in his supplemental report. (*See* Ex. B, at 5-6.) Starbucks would have used both its expert's opinions and the opinions set forth by Dr. Dean when deposing Dr. Michael Hehmann, another of Plaintiff's treating neurologists, about the difference between Dr. Hehmann's

opinion and those of Dr. Dean and Starbucks Corporation's expert. And, had Starbucks been able to pursue that strategy and confront Dr. Hehmann, there is a good likelihood that the sole disputed fact precluding summary judgment would have been resolved in Starbucks Corporation's favor.

In short, Starbucks was prejudiced by Plaintiff's untimely disclosure.

<u>Ability to Cure Prejudice</u>. Starbucks has already attempted to mitigate the prejudice caused by the belated disclosure by obtaining an expedited review of and a supplemental report addressing the new medical records by Starbucks Corporation's expert witness.[4] At the discovery dispute hearing, the Court acknowledged the prejudice to Starbucks and took additional steps to cure the prejudice to Starbucks when it ordered that discovery be reopened for the limited purpose of reopening the depositions of three witnesses regarding the untimely produced medical records and taking the deposition of a new witness. The Court also permitted Starbucks to file a new summary judgment motion. The combination of Starbucks Corporation's own actions and the Court's order have mitigated the substantive prejudice to Starbucks. However, this mitigation "imposes additional expenses and delay on Defendant that are solely due to Plaintiffs' late disclosures." *Bush*, 2013 WL 4496391, at *5. These expenses and delays create financial prejudice to Starbucks. And while such prejudice is curable, "financial prejudice to Defendant may be substantially cured only by requiring Plaintiffs to pay the costs related to the untimely disclosure." *Id.*

---

[4] The cost for the expedited review and report was $7,400.

<u>Disruption of Trial</u>. This trial was set for June 2025. Based on the Court's orders undertaken to cure the prejudice to Starbucks, the trial has been continued, and a new trial date has yet to be set. Plaintiff's failure to timely disclose his medical records has significantly disrupted trial and the ability to achieve a final resolution of this dispute.

<u>Bad Faith or Willfulness</u>. Starbucks does not assert that Plaintiff's failure was undertaken in bad faith; Plaintiff's failure was, however, a result of Plaintiff's willful lack of diligence. Plaintiff has an obligation to collect and produce relevant documents and information both pursuant to initial disclosure obligations and in response to discovery requests. In order to do so, the Federal Rules of Civil Procedure arm litigants with the ability to issue subpoenas to collect such documents and information. Plaintiff filed this suit in 2022, alleging physical injuries, but it was not until almost three years after filing—and six months after the close of discovery—that Plaintiff issued his first subpoena to his medical providers. And, without a HIPAA release, there was no action Starbucks could take to obtain Plaintiff's medical records.

## II. Payment of Costs and Fees Incurred in Association with the Untimely Disclosed Medical Records Is a Proper Sanction.

The automatic sanction under Fed. R. Civ. P. 37(c) is the exclusion of the untimely disclosed document, information, or witness. When, as here, the untimely disclosed information is helpful to the non-sanctioned party, exclusion is not required. At the discovery dispute hearing, the Court was able to procedurally, but not financially, cure the substantive prejudice to Starbucks caused by Plaintiff's untimely disclosure. Reopening discovery, continuing trial, and refiling a summary judgment motion all have their own attendant expenses and delay. Starbucks should not be required to take on the costs

incurred to cure the prejudice that Plaintiff created. In these situations, courts have often required the sanctioned party to pay the costs associated with curing the prejudice created by untimely disclosures. *See, e.g.*, *Rankin v. USAA Cas. Ins. Co.*, No. 16-CV-00373-WJM-STV, 2017 WL 2645631, at *4 (D. Colo. June 19, 2017) (finding that "the prejudice to Defendant may be cured by reducing the number of Newly Disclosed Witnesses and requiring Plaintiffs to pay the costs associated with the depositions of those witnesses"); *Exby-Stolley v. Bd. of Cnty. Comm'rs*, No. 13-CV-01395-WYD-NYW, 2016 WL 9735146, at *2 (D. Colo. June 23, 2016) (permitting recovery of costs and attorney's fees incurred to prepare for and take additional depositions based on untimely disclosures); *Bush*, 2013 WL 4496391, at *6 (finding it to be "objectively reasonable for Defendant to seek reasonable fees and expenses in connection with its additional discovery"). Payment of attorney's fees and expenses is an appropriate sanction here, and that is the sanction Starbucks requests.

## CONCLUSION

For the foregoing reasons, Starbucks respectfully requests (1) its attorney's fees and costs incurred to take the additional deposition testimony, (2) costs incurred to obtain an expedited supplemental expert report based on the untimely produced medical records, and (3) its attorney's fees and costs incurred to file a new summary judgment motion. If granted, Starbucks will submit an itemized list of these fees and costs, together with proof of their expenditure, within 14 days of any such order so that Plaintiff may contest the amount and the Court can make a determination as to the reasonableness of those fees and costs.

Dated: May 23, 2025

          <u>*s/ Andrew Garnett*</u>
Andrew Garnett, Reg. No. 45220
Robert L. Barlow, Reg. No. 43547
Kristin L. Arthur, Reg. No. 52397
Garnett Powell Maximon Barlow & Farbes
1125 17th Street, Suite 2200
Denver, CO 80202
Telephone: (303) 991-3344
andrew.garnett@garnettlegalgroup.com
rob.barlow@garnettlegalgroup.com
kristin.arthur@garnettlegalgroup.com

*Attorneys for Defendant Starbucks Corporation*

### CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2025, a true and correct copy of the foregoing **MOTION FOR SANCTIONS** was e-filed with the Clerk of Court via the CM/ECF System which will send notification of such filing to all counsel of record:

>Sean M. Dormer
>Jessica Mauser
>Amy N. Rogers
>Dormer Harpring, LLC
>3457 Ringsby Court, Unit 110
>Denver, CO 80216
>smd@denvertrial.com
>jmm@denvertrial.com
>amr@denvertrial.com
>
>*Attorneys for Plaintiff*

<u>*s/ Tracy Williams*</u>
Tracy Williams