## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-03295-DDD-GPG

Donald Harper,

      Plaintiff,

v.

Starbucks Corporation,

      Defendant.

---

Plaintiff Donald Harper's Motion to Strike
Defendant Starbucks Corporation's Supplemental Expert Report

---

Plaintiff Donald Harper ("Mr. Harper"), through his attorneys, Dormer Harpring, LLC, files his Motion to Strike Defendant Starbucks Corporation's ("Starbucks") Supplemental Expert Report ("Motion") and states as follows:

## **INTRODUCTION**

On May 7, 2025, Starbucks requested a discovery dispute hearing, which was held on May 8, 2025. Starbucks' assertion that it received brand new information that Mr. Harper had "significant preexisting nerve injuries that were not apparent prior to this latest production of medical records" is not supported by the record.

Starbucks manufactured this discovery dispute to improperly bolster the opinions set forth in Dr. Delarosa's original report, claiming that this "new" information put "the entire case in disarray," when in fact, the information of which

its expert now opines has been available to Starbucks for years, much of which Starbucks has had in its possession since April 2022. Starbucks served a "supplemental" expert report by Dr. Delarosa on May 2, 2025 attached as **Exhibit 1** ("supplemental report"), which improperly expands the opinions disclosed in his original report, attached as **Exhibit 2** ("original report"), as opposed to being a true "supplement" as contemplated by F.R.C.P. 26(e). Nothing prevented Dr. Delarosa from offering the expanded opinions in his supplemental report, in his original report.

As a result, the Court—based on Starbucks' representations, which are contrary to the facts—is allowing Mr. Harper to be subjected to deposition twice; he is now forced to respond to multiple briefs and to file an affirmative motion fighting Starbucks' manufactured discovery dispute; and the Court ordered the reopening of discovery with depositions ordered for three of his treating providers, two of which were already deposed, and one of which has long since retired. Worst of all, Starbucks' manufactured discovery dispute at the 11th hour caused Mr. Harper to lose his anticipated trial date, which was a three-day damages-only trial set for June 23, 2025.

As demonstrated herein, throughout this case, Starbucks has delayed, which is the cause of its own expert disclosure problems. Mr. Harper should not be penalized by Starbucks' failure to conduct a diligent investigation of records that have been in its possession for years, nor should he be penalized for Starbucks failure to engage in the discovery process sooner and timely raising any issues prior to the discovery cutoff. Because Dr. Delarosa's "supplemental" expert report is merely an improper

attempt to bolster his prior opinions despite already having the information in his possession he would have needed to offer such opinions. As such, Mr. Harper requests that the Court strike Dr. Delarosa's "supplemental" report from being offered at trial.

## BACKGROUND

1.     On **August 23, 2019**, at its coffee shop located at 2620 Woodgate Road, Montrose, CO, Starbucks failed to properly secure one of its commercial umbrellas to its base. A gust of wind blew the umbrella into the air which then struck Mr. Harper on his left collarbone area.

2.     Starbucks admitted liability for failing to secure its umbrella, but not until after forcing Mr. Harper to litigate the issue, which required hiring an expert.

3.     The complaint in this matter was originally filed in Colorado state court on **August 18, 2021**, alleging negligence and premises liability claims.

4.     Starbucks filed its answer on **November 19, 2021**, and then removed this case to federal court on **December 8, 2021**.

5.     Discovery in this case has been ongoing for over four years.

6.     The parties filed six joint motions to modify the scheduling order to extend discovery deadlines. *See Orders* [#30, #33, #41, #46, #52, #66].

7.     In the **November 30, 2022** motion filed at Doc. #31, Starbucks cited the need to receive Mr. Harper's written discovery responses and to take his deposition as the basis for seeking an additional extension of time to make its expert disclosures;

however, Starbucks did not request dates for Mr. Harper's deposition until **August 23, 2023**. *See 8/23/23 Email Requesting Plaintiff Depo*, attached as **Exhibit 3**.

8.    Starbucks did not serve written discovery on Mr. Harper until **August 9, 2023**, <u>nearly two years after the case was "at issue</u>."[1]

9.    Mr. Harper served his expert disclosures on **September 8, 2023**.

10.    On **October 10, 2023**, Starbucks' expert disclosures were due.

11.    On **October 23, 2023**, Starbucks filed a fifth joint motion to modify the scheduling order [#50], seeking an extension of time to serve its expert disclosures.

12.    On **December 8, 2023**, Starbucks served its expert disclosures, identifying a singular expert, Matthew Delarosa, M.D., an orthopedic surgeon, and disclosing Dr. Delarosa's original report. *See* **Exhibit 2**.

13.    On **February 27, 2024**, Erik Moya, Mr. Harper's counsel who had been primarily handling Mr. Harper's case, withdrew.

14.    On **May 23, 2024**, <u>21-days before the close of discovery</u>, counsel for Starbucks emailed counsel for Mr. Harper, requesting deposition dates for four of Mr. Harper's treating providers: Dr. Dean, Dr. Hehmann, Dr. Luker, and Dr. Treadwell,[2] and asked Mr. Harper's counsel to facilitate half day depositions for each. *See Emails*, attached as **Exhibit 4**.

---

[1] Mr. Harper timely objected to providing releases in response to RFP 9 and responded that he would continue to provide Mr. Harper's medical records. Mr. Harper made a second supplemental 26(a)(1) disclosure on 12/20/23.
[2] Dr. Treadwell was deposed on June 5, 2024.

15.     Counsel for Mr. Harper then began contacting the treating providers and responded to counsel for Starbucks on **June 7, 2024**, informing that Dr. Luker was unavailable for deposition prior to the discovery cutoff; that they were still working to connect with Dr. Hehmann; and that Dr. Dean had retired and closed his practice and thus, they had not been able to get in touch with him. *See* **Exhibit 4**.

16.     Discovery cutoff was **June 13, 2024**.

17.     On **June 28, 2024**, Starbucks filed a motion seeking leave of Court to conduct two depositions outside the discovery cut-off deadline [#69], which was granted. Starbucks stated nothing further about wanting to depose Dr. Dean.

18.     Also on **June 28, 2024**, Starbucks filed a motion to extend the deadline to file dispositive motions [#70]. The Court denied Starbucks' request to amend the scheduling order for a *seventh time*, ruling that Starbucks failed to set forth extraordinary circumstances justifying this extension request.

19.     On **July 25, 2024**, undersigned counsel entered her appearance in this matter on behalf of Mr. Harper.

20.     Starbucks deposed Dr. Luker on **July 30, 2024**, and it deposed Dr. Hehman on **August 1, 2024**.

21.     On **August 23, 2024**, Mr. Dormer, counsel for Mr. Harper, telephoned counsel for Starbucks to ask whether it planned to serve a final supplemental expert report, and if so, when. Starbucks informed that it did want to supplement after receiving "updated records," without identifying anything other than the lumbar

spine surgery records, to which Mr. Harper stood on his prior objection to providing. Mr. Dormer asked Starbucks to inform regarding any records it identified as "missing," but Starbucks could not do so, other than to argue generally that it believed the records were incomplete. Mr. Dormer, in an attempt to compromise, despite discovery having been long closed and without agreeing to reopen further discovery, agreed to review for anything that might be missing and submit records requests.

22.    On **December 9, 2024**, counsel for Mr. Harper received a "no records" notice from Rocky Mountain Orthopedics, the provider who performed the 2024 EMG, stating that it had "no dates of treatment as requested." *See No Records Notice*, attached as **Exhibit 5**. Believing that this notice was sent in error, Mr. Harper's counsel submitted a new records request and contacted Rocky Mountain Orthopedics to obtain Mr. Harper's 2024 EMG report.

23.    On **January 3, 2025**, undersigned counsel emailed counsel for Starbucks, informing that Mr. Harper was preparing to disclose additional records and asking whether, aside from the EMG report, there were any other records that Starbucks had specifically requested. *See Jan. 2025 Emails*, attached as **Exhibit 6.**

24.    In response, Starbucks did not identify any other record it believed was missing, and instead chastised counsel to "obtain and provide every relevant medical record in this case." *See* **Exhibit 6**.[3] As such—and in accordance with Judge

---

[3] Just as a plaintiff in a lawsuit has a duty to obtain and produce all relevant records and information, subject to the proportionality factors set forth in F.R.C.P. 26(b)(1), the receiving party

Gallagher's direction at the Dec. 2024 Pretrial Conference, that, if there were any records requested that were not yet received by the end of the week of **Jan. 6, 2025,** to serve subpoenas—on **Jan. 10, 2025**, counsel for Mr. Harper served four subpoenas.

25.    On **January 9, 2025**, Mr. Harper served his 5th Supplemental 26(a)(1) Disclosures, which included the 2024 EMG report.

26.    On **March 7, 2025**, counsel for Starbucks emailed counsel for Mr. Harper, stating that two sentences from a singular record from 2013 Mr. Harper's now-retired treating Neurologist, for a visit more than six (6) years before the umbrella incident, "changed the entire course of Starbucks Corporation's defense in this case." *See Conferral Emails*, attached as **Exhibit 7**.

27.    On **April 21, 2025**, Mr. Harper disclosed the records received in response to the subpoenas.

28.    Starbucks inaccurately claims in both its conferral emails and in its representations to the Court that there was "new" information contained in the records disclosed in Mr. Harper's 5th and 6th 26(a)(1) Disclosures (served on January 9, 2025, and on April 21, 2025, respectively).

29.    The below table tracks Starbucks' allegations with an identification of the date/record in which the claimed "new" information was previously disclosed, in some instances, more than **three** years ago:

---

has a duty pursuant to F.R.C.P. 26 and the case management principles to diligently review the materials it receives and raise any issues within the discovery cut-off.

| Starbucks Allegations:[4] | Date Disclosed/Record/Disclosure: |
|---|---|
| Dr. Dean's March 20, 2013 record "demonstrates that Mr. Harper was being seen by a neurologist before the Incident at Starbucks."<br><br>**This information was known to Starbucks since April 22, 2022.** | **Disclosed April 4, 2022 – Initial Disclosures**<br><br>GVNR 4 states that Dr. Dean, Mr. Harper's treating Neurologist, "saw this gentleman in 2013 for postconcussion syndrome […] His surgical history is reviewed and includes a cervical spine surgery. His medical history is reviewed and includes several motor vehicle accidents. He also fell off of a building in 2012 (which is why I saw him in 2013."<br><br>*See Dean Records, GVNR 1-8*, **Exhibit 8**;<br>*see also Dean Records, GVNR 9-79*, **Exhibit 9**. |
| "At GVNR 011 it states 'P.P. Priv-Head,' but the context of the sentence relates to a prior "pretty significant injury to his left shoulder."<br><br>**This information was known to Starbucks since April 22, 2022.** | **Disclosed April 22, 2022 – Initial Disclosures**<br><br>GVNR 4 states that Dr. Dean "saw this gentleman in 2013 for postconcussion syndrome **and at that time he sustained a pretty significant injury to the left shoulder."** |
| "At GVNR 034, it states that Mr. harper has been in 'several MVA.'"<br><br>**This information was known to Starbucks since April 22, 2022.** | **Disclosed April 22, 2022 – Initial Disclosures**<br><br>GVNR 4 states that "His medical history is reviewed **and includes several motor vehicle accidents**." |
| "Records produced from 10/29/2012 demonstrate a history of lumbar laminectomy." | **Disclosed Dec. 20, 2023 – 2nd Supp Disclosures.[5]**<br><br>THR 4, 8, 10, 19, 26, 27, and 32 all make reference to the remote history of lumbar laminectomy. *See THR Recs*, attached as **Exhibit 10**. |

---

[4] *See* **Exhibit 7**.
[5] Plaintiff objects to the admissibility of these records at trial.

| | |
|---|---|
| **This information was known to Starbucks since Dec. 20, 2023.** | |
| "In his 2012 ladder fall, Plaintiff injured his left shoulder, neck, and low back. *See* GVNR 043, the first two of which are injuries he claims here and the third is something that has lowered his quality of life, made him unable to walk (because lumbar spine innervates the legs), and has caused him to be unable to work."<br><br>**This information was known to Starbucks since April 22, 2022 and Dec. 20, 2023.** | **Disclosed April 22, 2022 – Initial Disclosures**<br><br>SCLHPR 42 states "Complaining of bilateral, but left greater than right shoulder pain. He describes falling off a ladder 3 years ago. He had significant injuries that took the focus of his medical attention. Since that time he has been dealing with bilateral anterior lateral shoulder pain.<br><br>SCLHPR 47, describing an imaging study of the left shoulder, 2 or more views, with the reason for the study being "Fall one year ago with pain." *See SCLHPR Recs*, attached as **Exhibit 11**.<br><br>**SCR 4, Disclosed Dec. 20, 2023 – 2nd Supp.**<br><br>SCR 4 states that Mr. Harper had a low back surgery and was in a wheelchair. *See* SCR 4, **Exhibit 12**. |
| "Mr. Harper had impingement syndrome in his left shoulder and a partial thickness tear there in *2013*. *See* GVNR 072."<br><br>**This information was known to Starbucks since April 22, 2022.** | **Disclosed April 22, 2022 – Initial Disclosures**<br><br>MFMR 1 & 2 states that Mr. Harper had decreased range of motion to the left shoulder. *See* MFMR Recs, attached as **Exhibit 13**.<br><br>In addition, this information was discussed at length in Dr. Delarosa's Report disclosed on Dec. 8, 2023.<br><br>In addition, Starbucks was clearly aware of this information, as it questioned Dr. Luker about it in his deposition on July 30, 2024. For example:<br><br>1   BY MR. GARNETT:<br>2      **Q     And so you repaired his right rotator cuff,**<br>3   **correct?**<br>4      A     You'll have to forgive -- I did, 2019,<br>5   yes.<br>6      **Q     And when you did that, his left rotator cuff**<br>7   **was torn, correct?**<br>8      A     I believe that's right.<br>9      **Q     And he was diagnosed with a torn rotator** |

| | |
|---|---|
| | **10** cuff in -- not ordered, but it was recommended that<br>**11** he have surgery to repair his torn left rotator cuff<br>**12** years before the umbrella incident, correct?<br><br>*See Luker Depo*, attached as **Exhibit 14**, p. 27:1-17. |
| "We also learned that, in Oct. 2012, Mr. Harper could not raise his left arm after the fall on the roof in late 2012—"PATIENT CANNOT RAISE LEFT SHOULDER." GVNR 077.<br><br>**This information was known to Starbucks since April 22, 2022.** | **Disclosed April 22, 2022 – Intial Disclosures**<br><br>SCLHPR 39: "Patient is experiencing progressively worsening pain and dysfunction to both shoulders. He localizes the pain to the anterolateral aspects bilaterally. Symptoms are exacerbated trying to reach to or above shoulder level."<br><br>*See* SCLHPR 39, attached as **Exhibit 15**. |
| "Before we received these new records, we were under the impression that the spinal fusion occurred around 2012-2013. […] The same March 20, 2013 record from Dr. Dean states that he had his Cervical Spine Surgery – C5-6-7 fusion with hardware in 2003."<br><br>**This information was known to Starbucks since April 22, 2022.** | **Disclosed April 22, 2022 – Initial Disclosures**<br><br>**Starbucks has had this exact information in its possession since April 22, 2022.**<br><br>GVNR 3 states (**Exhibit 8**):<br><br> |
| "The record also states that Mr. Harper's 10/2/2012 fall resulted in a loss of consciousness."<br><br>**This information was known to Starbucks since April 22, 2022.** | **Disclosed April 22, 2022 – Initial Disclosures**<br><br>VAPR 41: "LOC [loss of consciousness] fall – mild memory impairment."<br><br>*See VAPR 41*, attached as **Exhibit 16**. |

**LEGAL AUTHORITY**

Fed.R.Civ.P. 26(e) contemplates the supplementation of expert reports "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if that additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]"

**However, "[a] supplemental expert report that states additional opinions or rationales or seeks to 'strengthen' or 'deepen' opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)."** *See Cook v. Rockwell Intern. Corp.*, 580 F.Supp.2d 1071, 1169 (D. Colo. Dec. 7, 2006) (internal citations omitted). "To rule otherwise would create a system where preliminary [expert] reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given." *Id.* (internal citations omitted). "This result would be the antithesis of the full expert disclosure requirements stated in Rule 26(a)." *Id; see also D.G. ex rel. G. v. Henry*, 2011 WL 2881461 at *2 (N.D. Oklahoma, July 15, 2011) ("Such a system would eviscerate the expert report requirements of Rule 26, would wreak havoc in docket control, and would amount to unlimited expert opinion presentation.").

Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that

information or witness to supply evidence in a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *See* F.R.C.P. 37(c)(1).

Whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (internal citations omitted). "A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose." *Id.* Nevertheless, the *Woodworker's* factors should guide the trial court's discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness. *Id.*

## ARGUMENT

1. **The Federal Rules of Civil Procedure and Colorado Law Do Not Permit Supplemental Reports That Merely Attempt to Bolster or Deepen Previously Provided Expert Opinions.**

Fed. R. Civ. P. 26(a)(2)(B) requires experts to disclose in their report "a **complete** statement of all opinions the witness will express and the basis and reasons for them." *See* F.R.C.P. 26(a)(2)(B) (emphasis added). "Permissible supplementation under the Rules ... 'means correcting inaccuracies, or filling the interstices of an incomplete report based on information <u>that was not available at the time of the initial disclosure</u>.'" *Seidman v. Am. Fam. Mut. Ins. Co.*, No. 14-cv-03193-WJM-KMT, 2016 WL 9735768, at *4 (D. Colo. May 26, 2016).

Although the Rules contemplate supplemental expert reports, courts are critical in analyzing whether the information contained in the alleged "supplements" are truly based on new or incorrect information, or if the supplemental report is merely an attempt to expand previously provided opinions. The usage of a supplemental report to bolster an expert's opinions is an improper use of rebuttal opinions. *Carballido v. Target Corp.*, 2021 WL 1376997 at *2 (D. Colo. 2021). "[A]n expert cannot decline to discuss information he […] possessed at the time the expert drafted an initial report and then later decide to discuss that information under the guise of supplementation or providing additional context to newly obtained information." *See Cereceres v. Walgreen Co*, No. (CASE NO), 2022 WL 2105895, at *5 (D. Colo. June 9, 2022) (the defendant's supplemental disclosures of reports were belated attempts to discuss information previously known to the defendant.).

In *Cook v. Rockwell Intern. Corp.*, Judge Kane reviewed the supplemental report submitted by an expert and found that "there is no question that [the expert's] proffered testimony on the points identified by Plaintiffs are not attempts to correct inaccuracies in the 1996 report or to complete it based on information that was not available then. Rather, this testimony offers new or expanded opinions and discussions based largely on information that was available at the time of [the expert's] initial disclosures. Such 'supplementation' is not permitted under the Federal Rules." *See* 580 F.Supp.2d 1071, 1169-70 (D. Colo. Dec. 7, 2006).

In analyzing the supplemental report pursuant to C.R.C.P. 37(c)(1), the *Cook* court found that the supplemental expert report was neither harmless nor substantially justified because expert discovery had closed years before the supplemental disclosures. *Id.* at 1171. The court further found that the supplement was an improper attempt to expand the expert's testimony, and that the expert had been deposed years prior based on the original disclosures, and thus this prejudiced the plaintiffs in their preparation for trial. *Id.* The court held that reopening discovery at that point in the case after discovery had been closed for years to cure the prejudice was not a just or viable option at the late stage of trial preparation and allowing the supplemental report would have "disrupted the trial and possibly delayed it." *Id.*

2. **Dr. Delarosa's Report Disclosed on May 2, 2025 Violates F.R.C.P. 26(e) Because it is Not a "Supplemental Report," But Rather an Impermissible Attempt to Strengthen and Deepen His Opinions.**

The opinions set forth in Dr. Delarosa's most recent supplemental report could have been provided **without** the information contained in Plaintiff's last two supplemental (a)(1) disclosures.

The opinions in Dr. Delarosa's original report discuss Mr. Harper's prior neck fusion; the supraspinatus tendinopathy and labral tear in his left shoulder; his fall off the ladder; difficulties with his left arm including constant pain that is exacerbated with driving, shoulder use, overhead activity, and playing his banjo; treatment of both left and right shoulders, which included subacromial shoulder injections on both shoulders and a right rotator cuff surgery. Dr. Delarosa notes Mr.

Harper's limited range of motion due to pain and inability to lift his arm on page 3 of his original report, noting that the records state that "[h]e had 160 degrees of forward flexion he had a pain response with external rotation." *See* **Exhibit 2**.

Dr. Delarosa's original report also discusses Mr. Harper's involvement in a prior motor vehicle accident where a drunk driver hit him and that he hurt his neck and required surgery. *Id.* at p. 20. He notes that Mr. Harper has a steel plate and 9 screws, grafts, and "all that in there." He states it was not an emergency surgery but slowly came on, and that this was roughly 20-35 years ago. Dr. Delarosa notes that Mr. Harper stated that his neck pain resolved after the surgery. *Id.* at p. 21. Dr. Delarosa describes Mr. Harper's fall off a roof from a one-story building in which he landed on his head, suffering head, neck, and left shoulder injuries. *Id.* He noted that Mr. Harper "fractured something in his cervical spine" but he took it easy for a while and it healed. *Id.* He describes Mr. Harper's low back surgery in 2022 in which Mr. Harper had leg nerve issues and was in a wheelchair after this incident, but that his low back surgeries seemed to be helping. *Id.* Dr. Delarosa concludes by explaining what adjacent segment disease is with regard to cervical fusions and that this condition causes further neurologic issues down the road, and that in his opinion, all of this is unrelated to the umbrella incident. *Id.*

Dr. Delarosa's "supplemental" report that Starbucks served on May 2, 2025, proceeds to again discuss the cervical fusion; the low back discomfort since falling off the roof; the rotator cuff issues for his opposite shoulder, his right shoulder; and he

claims that the information included in the documents was not available for his prior reviews, which clearly contradicted by his detailed original report, as described above. *See* **Exhibit 1**. Dr. Delarosa was aware of all of these issues *before* he submitted this expanded supplement, as he described them extensively in his original report. Dr. Delarosa's supplemental report takes this as an opportunity to describe Mr. Harper as having "an unhealthy spine and peripheral nerve patient," a characterization he could have provided before, but didn't. *Id.* at p. 6. Dr. Delarosa repeats that Mr. Harper has "had multiple injuries to his cervical spine, fusion surgery, and additional surgery that he declined to undergo." *Id.*

In the supplemental report, Dr. Delarosa proceeds to expand his written opinions for the first time to include a theory regarding "double crush syndrome," something he neglected to include in his original report. In this context, he assumes that the C5-7 prior fusion is where "we know one compression location is in the cervical spine or at the surrounding levels," and concludes that "the second compression point is at the ulnar nerve at the medial elbow." *Id.* Dr. Delarosa opined in his original report regarding both Mr. Harper's cervical fusion and the ulnar nerve entrapment, but did not include these expanded opinions, that he could have included before, but didn't.

The Rules do not provide for this kind of ongoing, repeating disclosure process. Deadlines should be enforced to both protect the integrity of the courts, and, the rights and interests of the Plaintiff against the harms and prejudices he would face

without such protections. If Starbucks is permitted to present the information contained in Dr. Delarosa's supplemental report at trial, then Mr. Harper should be afforded the opportunity to respond to the expanded opinions. If Mr. Harper is not permitted the opportunity to respond, he is subjected to undue prejudice through no fault of his own, due to a late-filed improper supplement that was served long after the close of discovery. If Mr. Harper is permitted to respond to Dr. Delarosa's expanded opinions, Starbucks will surely seek to respond to any supplement filed by Mr. Harper's retained expert, Dr. Price, which would require yet another rebuttal. Mr. Harper would also need to file a 702 motion to respond to Dr. Delarosa's expanded opinions, expending even more time, energy, and expense to fight an untimely and improper disclosure. Thus, as described in further factual detail in the section below, because Dr. Delarosa's May 2, 2025 report is not a true "supplemental" report as contemplated by F.R.C.P. 26(e) but, rather, improperly seeks to expand upon opinions in his original report, Mr. Harper requests that this Court strike and exclude Dr. Delarosa's "supplemental report" and preclude him from testifying about its contents.

3. **Dr. Delarosa Provided Lengthy Commentary Regarding Mr. Harper's Ulnar Nerve Entrapment, Prior C5-6 Neck Fusion, Prior Fall Off a Roof, Prior Car Crash in his Original Expert Report and Testified Extensively About These Issues at his June 4, 2024 Deposition.**

Starbucks assertions that the "new" information "changed the entire course of Starbucks Corporation's defense in this case" ignores the fact that  Dr. Delarosa not only had this information previously, ***but he opined extensively about the issues at length in his first report***. *See* **Exhibit 2**.

In addition to describing these issues in his first report, Dr. Delarosa testified extensively about them at his June 6, 2024 deposition. Dr. Delarosa testified that he believes Mr. Harper has ulnar nerve entrapment with objective testing, pain, numbness, tingling in his ring and small finger, and that these findings indicate that he has an ulnar nerve problem. *See Delarosa Depo*, attached as **Exhibit 17**, at 22:16-26:23. Dr. Treadwell testified that the left arm numbness and tingling were "likely not arising from the shoulder." *Id.* at 23:21-24:2. He testified that he believes Mr. Harper has "double crush syndrome" relating to his cervical spine and elbow that is causing his symptoms, despite not including that opinions in his original report. *Id.* at 29:12-25. Later in his deposition, Dr. Treadwell backtracks and opines that to a reasonable degree of medical probability, he does *not* believe Mr. Harper suffered a double crush injury, but "he has the propensity to have this problem" and the "more probable situation is due to his prior injuries and surgeries of his neck, in particular, in predisposing factor for his elbow." *Id.* at 80:3-16.

Dr. Delarosa specifically testified regarding Mr. Harper's 2003 cervical fusion. Dr. Delarosa admitted that he knew Mr. Harper had a prior cervical fusion and that the fusion involved the C5-6 levels. *Id.* at 37:18-25. Dr. Delarosa testified that injuries at the C5-6 level "historically do not" affect the ulnar nerve and that he would not expect injury to the C-5 or C-6 levels to correlate with any ulnar nerve problem. *Id.* at 38:2-18. Dr. Delarosa admits that numbness or paresthesia of the pinky finger does not correlate with injury to the C-5 and C-6 levels." *Id.* at 38:19-22. Of note, Dr.

Delarosa noted in his original report that Mr. Harper had an MRI, which showed that his fusion was unchanged following the umbrella incident – "an unchanged imaging of his ACDF of C5-C7." *See* **Exhibit 2**.

Dr. Delarosa testified regarding left arm numbness and tingling, double crush, ulnar nerve entrapment, and Mr. Harper's cervical fusion. He testified regarding Mr. Harper's prior car crash, and that he "believe[d] the fusion was due to the car accident and then potentially some exacerbation when he fell off the roof. And that – that's preexisting. It is what it is and was not – **you know, the impact from the umbrella would have had to hit his cervical spine to impact that component.**" *Id.* 81-1-8. Dr. Delarosa testified that he believes the fusion and potential cervical injury predated the umbrella incident, that he does not believe any cubital tunnel injury (ulnar nerve issue) is related to the umbrella incident, and that that falling off a roof and grabbing for part of a ladder or a gutter can provide the type of "traction effect" that can cause nerve injuries. *Id.* at 81:9-82-6.

It is preposterous for Starbucks to allege that it did not previously have the information set forth in Plaintiff's 5th and 6th supplemental disclosures when its own expert witness offered extensive opinions regarding that same exact information in both his December 2023 Report and in his June 2024 Deposition.

### 4. <u>Mr. Harper is Irreparably Prejudiced by Dr. Delarosa's Improperly Expanded Supplemental Report, and It Should be Stricken.</u>

When the expert disclosure rules are violated, Fed.R.Civ.P. 37(c) mandates that the information or witness not fully disclosed be barred from supplying evidence

on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless. In this case, the supplemental report is not harmless, and in fact caused significant prejudice to Mr. Harper. Drastic measures were taken, including continuing trial, reopening depositions of three medical providers, and ordering Mr. Harper to again be subjected to having his deposition taken. As such, the first factor of *Woodworking* analysis has clearly been satisfied. As to the second factor, there is no remedy at this point that would cure the prejudice that Mr. Harper suffered as to the loss of his trial date. That prejudice can only be mitigated now, but not cured, by striking Dr. Delarosa's supplemental report. As to the third *Woodworking* factor, the trial has already been disrupted, so this element is also satisfied. Regarding the fourth factor, whether the moving party acted with bad faith or willfulness, Mr. Harper submits that the delays Starbucks caused throughout this case, as described in the background section above, demonstrate that this discovery dispute was manufactured and then used as a wedge to force the rescheduling of trial so that it could impermissibly attempt to bolster its own expert opinions and create new evidence. There is evidence to support that the fourth factor has also been satisfied.

Starbucks' allegations that Mr. Harper's 5th and 6th supplemental disclosures contain all new information is belied by its own expert's testimony and reports. The table above, in conjunction with the attachments, shows these allegations to be demonstrably false. Starbucks' characterization of the disclosures as "new" and throwing the entire case "into disarray" is a gross exaggeration and was clearly done

to avoid the June 2025 trial date so that it could manufacture new evidence to bolster its own defense. This is wrong, and it is an abuse of the discovery process that directly harms Mr. Harper's access to the justice system. Starbucks could and should have raised any issues regarding "missing" records and sought the additional discovery it now claims it needs *years ago*, long before discovery closed, and not on the eve of trial.

If the Court will not agree to strike the supplemental report, at minimum, Mr. Harper should be permitted to file a response from his own retained expert witness. He further seeks the opportunity to file a 702 Motion for Dr. Delarosa's supplemental report and requests the opportunity to depose Dr. Delarosa regarding his supplemental report, and for any further relief this Court deems appropriate.

WHEREFORE, Plaintiff, Donald Harper, requests that this Court STRIKE Dr. Delarosa's supplemental report and preclude him from testifying regarding its contents at trial; in the alternative, Mr. Harper moves the Court to permit him to file a supplemental expert report from his own retained expert responding to Dr. Delarosa's supplemental report, and to permit him to file a 702 Motion on the supplemental report, and to grant him the opportunity to depose Dr. Delarosa regarding his supplemental report, and for any other relief as this Court deems just.

RESPECTFULLY SUBMITTED this 23rd day of May, 2025.

/s/ Amy N. Rogers
Sean Dormer, Colo. Atty. Reg. 44962
Jessica Mauser, Colo. Atty. Reg. 47630
Amy N. Rogers, Colo. Atty. Reg 49266
DORMER HARPRING, LLC

3457 Ringsby Court, Unit 110
Denver, CO  80216
Telephone: (303) 756-3812
Facsimile: (303) 477-7400
E-mail:        smd@denvertrial.com
                    jmm@denvertrial.com
                    anr@denvertrial.com
*Attorneys for Plaintiff Donald Harper*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 23rd day of May, 2025, a true and correct copy of the foregoing was served on the following, by electronic filing using the CM/ECF filing system, which will send a copy to the following email addresses:

Andrew Garnett, Esq.
Robert Barlow
Garnett Powell Maximon Barlow & Farbes, LLC
1125 17th Street, Suite 2200
Denver, Colorado 80202
(303) 991-3344
andrew.garnett@garnettlegalgroup.com
*Attorneys for Defendant Starbucks*

*/s/ Ella K. Nelson*
Ella K. Nelson, Legal Assistant