

Amy Rogers <anr@denvertrial.com>

---

## Harper v. Starbucks - Discovery Conferral

**Andrew Garnett** <andrew.garnett@garnettlegalgroup.com>                    Mon, Apr 21, 2025 at 3:18 PM
To: Amy Rogers <anr@denvertrial.com>
Cc: Rob Barlow <rob.barlow@garnettlegalgroup.com>, Sean Dormer <smd@denvertrial.com>, Brittany Freeman
<bef@denvertrial.com>, Ella Nelson <ekn@denvertrial.com>, "HarperZ8821249@denvertrial.filevineapp.com"
<HarperZ8821249@denvertrial.filevineapp.com>, Tracy Williams <tracy.williams@garnettlegalgroup.com>, Kristin Arthur
<kristin.arthur@garnettlegalgroup.com>

Thank you for the clarification.


Andrew


**Andrew P. Garnett**

*Managing Partner*

**Garnett Powell Maximon Barlow & Farbes**

1125 17th Street, Suite 2200

Denver, CO 80202

tel: 720.987.3268

*Pronouns: he/his/him*

https://www.garnettlegalgroup.com/


**When Trial Experience Matters.**




---

**From:** Amy Rogers <anr@denvertrial.com>
**Sent:** Monday, April 21, 2025 3:18 PM
**To:** Andrew Garnett <andrew.garnett@garnettlegalgroup.com>
**Cc:** Rob Barlow <rob.barlow@garnettlegalgroup.com>; Sean Dormer <smd@denvertrial.com>; Brittany Freeman
<bef@denvertrial.com>; Ella Nelson <ekn@denvertrial.com>; HarperZ8821249@denvertrial.filevineapp.com;
Tracy Williams <tracy.williams@garnettlegalgroup.com>; Kristin Arthur <kristin.arthur@garnettlegalgroup.com>
**Subject:** Re: Harper v. Starbucks - Discovery Conferral


Correct -- the 6th Supp we just served includes the records we received from the subpoena request. Plus the three unredacted
records I identified in my last email.

On Mon, Apr 21, 2025 at 3:16 PM Andrew Garnett <andrew.garnett@garnettlegalgroup.com> wrote:

Great. We'll take a look.


But just to clarify, that link/production has the documents received in response to the subpoenas as well as those unredacted documents you attached to your previous email?


**Andrew P. Garnett**

*Managing Partner*

**Garnett Powell Maximon Barlow & Farbes**

1125 17th Street, Suite 2200

Denver, CO 80202

tel: 720.987.3268

*Pronouns: he/his/him*

https://www.garnettlegalgroup.com/


***When Trial Experience Matters.***



---

**From:** Amy Rogers <anr@denvertrial.com>
**Sent:** Monday, April 21, 2025 3:15 PM
**To:** Andrew Garnett <andrew.garnett@garnettlegalgroup.com>
**Cc:** Rob Barlow <rob.barlow@garnettlegalgroup.com>; Sean Dormer <smd@denvertrial.com>; Brittany Freeman <bef@denvertrial.com>; Ella Nelson <ekn@denvertrial.com>; HarperZ8821249@denvertrial.filevineapp.com; Tracy Williams <tracy.williams@garnettlegalgroup.com>; Kristin Arthur <kristin.arthur@garnettlegalgroup.com>
**Subject:** Re: Harper v. Starbucks - Discovery Conferral


Hi Andrew,


Brittany just served. Thank you!


On Mon, Apr 21, 2025 at 3:11 PM Andrew Garnett <andrew.garnett@garnettlegalgroup.com> wrote:

Thanks, Amy.

When will you be producing the documents you received in response to the subpoenas?


Thank you,

Andrew


**Andrew P. Garnett**

*Managing Partner*

**Garnett Powell Maximon Barlow & Farbes**

1125 17th Street, Suite 2200

Denver, CO 80202

tel: 720.987.3268

*Pronouns: he/his/him*

https://www.garnettlegalgroup.com/


**When Trial Experience Matters.**




---

**From:** Amy Rogers <anr@denvertrial.com>
**Sent:** Monday, April 21, 2025 3:07 PM
**To:** Rob Barlow <rob.barlow@garnettlegalgroup.com>
**Cc:** Andrew Garnett <andrew.garnett@garnettlegalgroup.com>; Sean Dormer <smd@denvertrial.com>;
Brittany Freeman <bef@denvertrial.com>; Ella Nelson <ekn@denvertrial.com>;
HarperZ8821249@denvertrial.filevineapp.com; Tracy Williams <tracy.williams@garnettlegalgroup.com>;
Kristin Arthur <kristin.arthur@garnettlegalgroup.com>
**Subject:** Re: Harper v. Starbucks - Discovery Conferral


Dear Rob,


I am unsure whether the two unredacted pages I emailed Friday went through, so I am reattaching them here. They are
Bates GVNR 78 and VAR 484.


We are also formally disclosing these pages in Plaintiff's 6th 26(a)(1) Supplemental Disclosure, along with the unredacted
Bates SMR 27 (hand X-ray record emailed on 3/28/25), which we are serving here shortly.


Thank you,

On Fri, Apr 18, 2025 at 2:43 PM Amy Rogers <anr@denvertrial.com> wrote:

Dear Rob,

Thank you for your patience as we reviewed the questions in your last conferral email. Thank you also for the kind words of congratulations on our recent trial.

In response to your last email, I conducted a painstaking review of every redaction code you raised to ensure that our redactions were appropriate. This email details that review.

I appreciate the point you made regarding T 1-2 partially innervating the arm, so I reviewed each "T-spine" redaction for any mention that may implicate the T1-2 levels. There were no redactions that were specific to the T 1-2 levels, but after reviewing, I am providing two pages of medical records unredacted. Though we think this unredacted information is only marginally relevant, we are providing it all the same in the spirit of good faith and cooperation with the discovery process. Copies of those unredacted pages are attached, and will also be disclosed in our 5th Supplemental 26(a)(1) Disclosure.

As for the lumbar spine ("L-spine") and "leg" redactions, Mr. Harper has not waived his right to privilege of his unrelated medical information regarding his lumbar spine/low back or leg by making a claim for a brachial plexus stretch injury affecting his left shoulder and arm. Although you may argue that any unrelated health issue has some impact on his quality of life, that does not trump his right to privilege for any unrelated, private medical information not directly at issue in this case. *Alcon v. Spicer*, 113 P.3d 735 (Colo. 2005); *see also Dillon v. Weil*, 109 P.3d 127 (2005). That said, nothing about that precludes you from presenting this argument or examining this question at trial, either with Mr. Harper directly or with other witnesses. But it does not allow you to access his privileged unrelated medical information. After taking extensive time to review each redaction, we do not believe there is anything relevant and non-privileged that we can unredact regarding his lumbar spine/low back or leg.

Regarding the singular "Torso/Chest" redaction we made—I reviewed this redaction as well. I will let you know that this redaction was for an X-ray of his ribs and chest, which was performed part of the same visit alongside the X-ray of his left hand record that we provided unredacted to you on March 28, 2024. All findings on this Torso/Chest X-ray were negative: no fractures, no lesions, no effusion, negative for traumatic injury, no torso/chest injury determined, etc. Nor did he receive any treatment for his torso/chest after having this X-ray taken. **There is nothing under this redaction related to any "left arm issues," any "double crush" issues, nor is there any mention under this redaction regarding C5-8.** As such, and after taking time to review, we do not believe there is a basis to unredact this information.

Finally—regarding Plaintiff's 5th Supplemental 26(a)(1) Disclosure, my team has been working diligently to get this final production out the door. When we subpoenaed records from the VA, we received a large file containing duplicate records that we have had to analyze and compare to determine what has already been produced. This is the last document that my team needs to finish processing, and then we can make the disclosure. We anticipate making the supplemental disclosure first thing on Monday morning.

I hope the above information provides clarity for the remaining questions you had. If you want to discuss further, I have good availability on this upcoming Monday and would be glad to jump on the phone or zoom. Just let me know. Thank you, and stay warm this weekend.


On Tue, Apr 15, 2025 at 11:22 AM Rob Barlow <rob.barlow@garnettlegalgroup.com> wrote:

Totally get it. Just a gentle nudge so we all keep this thing moving forward. Congrats on your verdict, too.


Rob

---

**From:** Amy Rogers <anr@denvertrial.com>
**Sent:** Tuesday, April 15, 2025 11:19 AM
**To:** Rob Barlow <rob.barlow@garnettlegalgroup.com>
**Cc:** Andrew Garnett <andrew.garnett@garnettlegalgroup.com>; Sean Dormer <smd@denvertrial.com>; Brittany Freeman <bef@denvertrial.com>; Ella Nelson <ekn@denvertrial.com>;

HarperZ8821249@denvertrial.filevineapp.com; Tracy Williams <tracy.williams@
garnettlegalgroup.com>; Kristin Arthur <kristin.arthur@garnettlegalgroup.com>
**Subject:** Re: Harper v. Starbucks - Discovery Conferral

Hi Rob,

I apologize for the delay. We received our verdict last Wednesday, and although we are happy with the result, recovering post-trial took a bit more out of me than I anticipated.

However, I am now back in the chair and this task is at the top of my list, so I should have a supplemental disclosure and a discovery conferral response to you within the next day or so. Again, I apologize, and thank you for your understanding. Be in touch soon. Thanks,

On Tue, Apr 15, 2025 at 11:12 AM Rob Barlow <rob.barlow@garnettlegalgroup.com> wrote:

Hey Amy,

Checking in on this. Do you all have any update? Thank you,

Rob

**Rob Barlow**

*Partner*

**Garnett Powell Maximon Barlow & Farbes**

1125 17th Street, Suite 2200

Denver, CO 80202

tel: 313.530.3150

*Pronouns: he/his/him*

https://www.garnettlegalgroup.com/

STATEMENT OF CONFIDENTIALITY & DISCLAIMER: The information contained in this email message is attorney privileged and confidential, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this email is strictly prohibited. If you have received this email in error, please notify us immediately by calling 303.991.3344 and delete the message. Thank you.

**From:** Amy Rogers <anr@denvertrial.com>
**Sent:** Monday, April 7, 2025 12:35 PM
**To:** Rob Barlow <rob.barlow@garnettlegalgroup.com>
**Cc:** Andrew Garnett <andrew.garnett@garnettlegalgroup.com>; Sean Dormer
<smd@denvertrial.com>; Brittany Freeman <bef@denvertrial.com>; Ella Nelson
<ekn@denvertrial.com>; HarperZ8821249@denvertrial.filevineapp.com; Tracy Williams
<tracy.williams@garnettlegalgroup.com>; Kristin Arthur <kristin.arthur@garnettlegalgroup.com>
**Subject:** Re: Harper v. Starbucks - Discovery Conferral

Just sending a quick note to let you know I have been working on this and hope to have a more definitive
response sometime tomorrow.

Thanks,

On Fri, Apr 4, 2025 at 2:48 PM Rob Barlow <rob.barlow@garnettlegalgroup.com> wrote:

> I think that makes a lot of sense, Amy. Thanks for your prompt response, even while
> in trial.
>
>
> Rob

---

**From:** Amy Rogers <anr@denvertrial.com>
**Sent:** Friday, April 4, 2025 2:44 PM
**To:** Rob Barlow <rob.barlow@garnettlegalgroup.com>
**Cc:** Andrew Garnett <andrew.garnett@garnettlegalgroup.com>; Sean Dormer
<smd@denvertrial.com>; Brittany Freeman <bef@denvertrial.com>; Ella Nelson
<ekn@denvertrial.com>; HarperZ8821249@denvertrial.filevineapp.com; Tracy Williams
<tracy.williams@garnettlegalgroup.com>; Kristin Arthur <kristin.arthur@garnettlegalgroup.com>
**Subject:** Re: Harper v. Starbucks - Discovery Conferral

Hi Rob,

Trial is going well! I just happened to see this email and had a moment to respond.

I appreciate your detailed response. I always believe in trying to confer and resolve issues, so if you could
permit me the opportunity to consider your response over the weekend, I will try to be in touch by the
beginning of next week with a response. Additionally, I will work to get the final disclosure of the subpoenaed
records by beginning of next week as well. Then we can decide if we are able to further narrow any issues prior
to bringing them to the Court.

Thanks,

On Fri, Apr 4, 2025 at 1:57 PM Rob Barlow <rob.barlow@garnettlegalgroup.com> wrote:

Amy,

We hope your trial is going well.

Thank you for the non-redacted version of the diagnostic imaging report for the xray of the left hand. We'll try to take each topic in turn that we think requires additional inquiry and conferral.

Preliminarily, can you please provide an update on the production of the medical records your office subpoenaed on behalf of Mr. Harper in January? As we have discussed, we have been waiting to bring this discovery issue to the Court's attention because we anticipate that those additional disclosures will need to be addressed. That said, we cannot wait without end, so we will be moving forward with this dispute and will mention that outstanding issue that may potentially come up later. To the extent there is an update on the status of that production, please let us know.

**Leg Redactions & Lumbar Spine Redactions**

As we understand it, Mr. Harper has significant joint degeneration in his lumbar spine. The lumbar spine innervates the legs.

Mr. Harper is bringing lost earning capacity, noneconomic damages, and permanent impairment/disfigurement claims. Because he is making such claims, he has put his lumbar spine issues and leg difficulties at issue. Given his type of employment that requires him to climb up ladders and onto roofs, we think his leg troubles and lumbar spine are a more likely culprit for his inability to work than this minor incident involving an umbrella. Likewise, his leg troubles are likely the true source of his permanent impairment or disfigurement and noneconomic damages.

It is our understanding that, after the umbrella incident, Plaintiff had multiple lumbar fusions in Texas and spent a considerable amount of time in a wheelchair. Those fusions (and the likely adjacent level segment breakdown) are an alternative explanation for Mr. Harper's inability to work, noneconomic damages, and his disfigurement or impairment damages that we are at least allowed to discover and that a jury should be able to consider.

For these reasons, we believe an implied waiver of the physician-patient privilege regarding leg-related issues, as well as lumbar spine ("L-Spine"), has occurred.

**Torso/Chest**

Your client has argued that his left arm difficulties are due to double crush syndrome. Depending on what this torso/chest event is, it could be an alternative injury to the nerves at C5-C8 explaining the second part of the double crush. Thus, if your client has double crush syndrome (which we very much dispute the evidence establishes, but your client continues to claim), this torso/chest injury could be an alternative explanation, which would mean the umbrella event did not cause the double crush.

**T-Spine Redactions**

T1 and T2 partially innervate the arm. If his orthopedic issues that are redacted are at T1 or T2, then there has been an implied waiver of the physician-patient privilege based on the assertion of double crush syndrome and the inability to use his left arm.

However, if the T-Spine redactions are related to degeneration at T3-T12, then we agree with you that you have not put them at-issue and no implied waiver has occurred.

**Double Crush**

In your email, you state "Mr. Harper is not asserting any claim to damages arising from issues related to his neck and low back. The only injury for which Mr. Harper is pursuing damages relates to his brachial plexus stretch injury affecting his left shoulder and extremity." **Are you withdrawing your claim of double crush?** If you are not, then anything related to his T1, T2, C5, C6, C7, and C8 nerves (nerves that innervate the neck and arms) is fair game. Double crush occurs when there are two injuries along the same nerve. So for example, one theory is an injury to the brachial plexus and the ulnar nerve at the elbow. An alternative theory would be, Mr. Harper has had a nerve injury at those cervical nerves closer to his spinal cord, requiring the prior fusion, and the second location is the ulnar nerve, which was

damaged in the surgery subsequent to the umbrella incident. For that reason, we are entitled to any incident or information suggesting a nerve injury to T1, T2, C5, C6, C7, or C8 from the foramin where those nerves originate between the vertebra at the base of the spinal cord all the way to where each of those nerves end in the arm.

**Remaining Issues**

We sympathize with your inability to obtain the records because of Mr. Harper's difficulties with being an accurate historian. However, the reality is that discovery *is* in disarray because Mr. Harper has not fulfilled his discovery obligations timely. The new information does change how we would have litigated this case—experts to retain, depositions to take, and topics to discuss in the depositions we did take.

Do you believe a further conferral by telephone would be fruitful? If yes, we are willing to have such a discussion. If not, we think we need to move forward with a motion to pierce your claims of privilege and to raise the issues we raised in our prior email about how these new disclosures impact the discovery process and seek appropriate sanctions from the Court.

Thanks for your consideration of these issues,

Rob

**Rob Barlow**

*Partner*

**Garnett Powell Maximon Barlow & Farbes**

1125 17th Street, Suite 2200

Denver, CO 80202

tel: 313.530.3150

*Pronouns: he/his/him*

https://www.garnettlegalgroup.com/

STATEMENT OF CONFIDENTIALITY & DISCLAIMER: The information contained in this email message is attorney privileged and confidential, intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination,

distribution or copy of this email is strictly prohibited. If you have received this email in error, please notify
us immediately by calling 303.991.3344 and delete the message. Thank you.

---

**From:** Amy Rogers <anr@denvertrial.com>
**Sent:** Friday, March 28, 2025 8:13 PM
**To:** Andrew Garnett <andrew.garnett@garnettlegalgroup.com>; Rob Barlow
<rob.barlow@garnettlegalgroup.com>
**Cc:** Sean Dormer <smd@denvertrial.com>; Brittany Freeman <bef@denvertrial.com>; Ella
Nelson <ekn@denvertrial.com>; HarperZ8821249@denvertrial.filevineapp.com
**Subject:** Re: Harper v. Starbucks - Discovery Conferral

Dear Andrew and Rob,

I hope all is well with both of you. Thank you for your patience as we carefully reviewed each of your
questions. I am providing this response to the discovery conferral that you had with Sean on February 19th.
Sean, Tim, and I are starting a two-week trial beginning on Monday, March 31st. I have endeavored to
respond to each and every inquiry in detail; however, we would be glad to schedule a call as soon as trial
wraps, should you feel there is more to discuss. My legal assistant Ella emailed you on March 17th with
potential dates/times for a phone call, so if you believe further conferral is needed after your review, please
respond to Ella and she will coordinate. Thank you.

As to the previously provided medical records, we have obtained and disclosed a significant amount
of medical records throughout the course of this case, and have tended to be overinclusive in what we have
provided. For example, providing records beyond five years in the spirit of transparency and providing
comprehensive responses. This includes the records disclosed as part of Plaintiff's 5th Supplemental 26(a)(1)
Disclosure.

In your March 7th email, with regard to our privilege log, all redactions have an accompanying log
that explains the privilege for each redaction made and identifies the relevant pages. For example, any
redactions made for inadmissible collateral source information has an accompanying code of "collateral
source." With regard to private medical information contained in Mr. Harper's records for treatment of body
parts/bodily systems that are not at issue in this case, each redaction has a corresponding notation for
"Physician Patient Privilege" in the log with an identification of the body part/bodily system affected. I hope
this provides some clarification. In any case, this is the method of privilege logging that Plaintiff has utilized in
this case since January 2023 to no objection from the Defendant until now. To cure any concern with our
method of privilege logging, we provide the following key:

**Collateral source redactions** are made pursuant to the limitations described in the proportionality
analysis set forth in F.R.C.P. 26, as well as in the following: *Wal-Mart Stores v. Crossgrove*, 276 P.3d 562
(Colo. 2012) (stating that "a tortfeasor should not benefit, in the form of reduced damages liability, from an
injured party's receipt of collateral source benefits."); *see* C.R.S. § 13-21-111.6 ("the verdict shall not be
reduced by the amount by which such person, his estate, or his personal representative has been or will be
wholly or partially indemnified or compensated by a benefit paid as a result of a contract entered into and
paid for by or on behalf of such person."); *see* C.R.S. § 10-1-135 ("The fact or amount of any collateral
source payment or benefits shall not be admitted as evidence in any action against an alleged third-party
tortfeasor or in an action to recover benefits under section 10-4-609."); *see Ronquillo v. EcoClean*, 500 P.3d
1130 (Colo. 2021) ("[B]ecause it is solely the tortfeasor's responsibility to make the injured plaintiff whole, any
benefits or gifts obtained from third-party "collateral" sources accrue solely to the benefit of the injured
plaintiff and are irrelevant in fixing the amount of the tortfeasor's liability."); *see Silva v. Basin Western, Inc.*,
47 P.3d 1184 (Colo. 2002) (stating that early disclosure of subrogation claims gives a defendant
unreasonable insight into a plaintiff's bargaining position, identical to the effect of disclosure of insurance
reserves or settlement authority).

**Physician Patient Privilege** redactions are made pursuant to *Alcon v.* Spicer, 113 P.3d 735 (Colo. 2005); *see also Dillon v.* Weil, 109 P.3d 127 (2005).

**Confidential personal information** (Social Security Number, Financial Information, Tax Information) redactions are made pursuant to *Martinelli v. Dist. Ct.*, 612 P.2d 1083 (1980); *In Re Dist. Ct*, 256 P.3d 687 (Colo. 2011); *Stone v. State Farm*, 185 P.3d 150 (Colo. 2008); *Alcon v.* Spicer, 113 P.3d 735 (Colo. 2005).

<u>In addition, we reviewed the records for each redaction code listed in your March 7th email</u>:

**"Hand" Redactions:**

·    There was only a single redaction for "Hand," which related to a redaction for an X-ray of Mr. Harper's hand on October 2, 2012. The left-hand x-ray was negative for traumatic injury, and noted an old fracture of the ulnar styloid process.

·    You will note that we previously did redact the basis for the Hand Xray, which noted pain at the "dorsal aspect of the left hand."

·    Although we disagree that this record is relevant or related to the claims and defenses at issue, nor is it the cause of his shoulder/arm symptoms, but in the spirit of cooperation and transparency, we are providing an unredacted copy of the singular redaction in the last set of records for "hand." Please see attached.

**"Leg" Redactions:**

·    There were five redactions made in the medical records affecting Plaintiff's leg.

·    There has been no waiver of privilege for any condition related to Mr. Harper's leg.

·    We maintain the appropriateness of these redactions. *See Weil v. Dillon*, 109 P.3d 127, (2005) ("While the trial court is vested with wide discretion to control the discovery process, we hold that the trial court in this case abused its discretion when it read Johnson to require Weil to authorize blanket disclosure of medical records without first determining the extent that the records requested were related to Weil's injuries and damages claimed.[4] If Dillon Companies narrows its request and makes a showing that the records requested were related to the injuries and damages complained of in the current litigation, then the court in its discretion could direct discovery to those medical records related to the cause and extent of the injuries and damages claimed and protect records that are wholly unrelated to Weil's current claims. In sum, records related to the cause and extent of the specific injuries and damages claimed by Weil are discoverable and are to be disclosed to Dillon Companies, however, Dillon Companies is not entitled to Weil's medical history for his generic, garden variety, claims of pain and suffering and loss of quality of life.")

·    Please explain your basis for asserting that any physician-patient privilege related to Mr. Harper's leg has been waived.

**"Back" Redactions:**

·    We searched the Privilege Log for any redactions related to Mr. Harper's "Back" and did not locate any redactions that were made on this basis.

·    Please advise where any such redactions were made related to "back" and we would be glad to review those redactions but at this point, there are none.

**"Torso/Chest" Redactions:**

·    There was only a single redaction for "Torso/Chest."

·    We disagree than any prior medical history of Mr. Harper's "torso/chest" is related to the claims and defenses in this case.

·    We maintain the appropriateness of these redactions. *See Weil v. Dillon*, 109 P.3d 127, (2005) ("While the trial court is vested with wide discretion to control the discovery process, we hold that the trial court in this case abused its discretion when it read Johnson to require Weil to authorize blanket disclosure of medical records without first determining the extent that the records requested were related to Weil's injuries and damages claimed.[4] If Dillon Companies narrows its request and makes a showing that the records requested were related to the injuries and damages complained of in the current litigation, then the court in its discretion could direct discovery to those medical records related to the cause and extent of the injuries and damages claimed and protect records that are wholly unrelated to Weil's current claims. In sum, records related to the cause and extent of the

specific injuries and damages claimed by Weil are discoverable and are to be disclosed to Dillon Companies, however, Dillon Companies is not entitled to Weil's medical history for his generic, garden variety, claims of pain and suffering and loss of quality of life.")

· Please explain your basis for asserting that any medical information related to Mr. Harper's "torso/chest" is relevant to the claims and defenses.

**"T-spine" Redactions:**

· There were only four redactions made regarding Mr. Harper's "T-spine."

· We disagree than any condition related to Mr. Harper's thoracic spine is at issue with regard to the claims and defenses.

· We maintain the appropriateness of these redactions. *See Weil v. Dillon*, 109 P.3d 127, (2005) ("While the trial court is vested with wide discretion to control the discovery process, we hold that the trial court in this case abused its discretion when it read Johnson to require Weil to authorize blanket disclosure of medical records without first determining the extent that the records requested were related to Weil's injuries and damages claimed.[4] If Dillon Companies narrows its request and makes a showing that the records requested were related to the injuries and damages complained of in the current litigation, then the court in its discretion could direct discovery to those medical records related to the cause and extent of the injuries and damages claimed and protect records that are wholly unrelated to Weil's current claims. In sum, records related to the cause and extent of the specific injuries and damages claimed by Weil are discoverable and are to be disclosed to Dillon Companies, however, Dillon Companies is not entitled to Weil's medical history for his generic, garden variety, claims of pain and suffering and loss of quality of life.")

· Please explain your basis for asserting that any physician-patient privilege related to Mr. Harper's thoracic spine has been waived.

**"L-spine" Redactions:**

· We disagree than any condition related to Mr. Harper's lumbar spine is at issue with regard to the claims and defenses. It is not clear why any information related to his lumbar spine has any relevance to his left ulnar nerve symptoms.

· We maintain the appropriateness of these redactions. *See Weil v. Dillon*, 109 P.3d 127, (2005) ("While the trial court is vested with wide discretion to control the discovery process, we hold that the trial court in this case abused its discretion when it read Johnson to require Weil to authorize blanket disclosure of medical records without first determining the extent that the records requested were related to Weil's injuries and damages claimed.[4] If Dillon Companies narrows its request and makes a showing that the records requested were related to the injuries and damages complained of in the current litigation, then the court in its discretion could direct discovery to those medical records related to the cause and extent of the injuries and damages claimed and protect records that are wholly unrelated to Weil's current claims. In sum, records related to the cause and extent of the specific injuries and damages claimed by Weil are discoverable and are to be disclosed to Dillon Companies, however, Dillon Companies is not entitled to Weil's medical history for his generic, garden variety, claims of pain and suffering and loss of quality of life.")

· Please explain your basis for asserting that any physician-patient privilege related to Mr. Harper's lumbar spine has been waived.

**"Circulatory" Redactions:**

· We disagree than any medication related to Mr. Harper's circulatory system is at issue with regard to the claim and defenses.

· We maintain the appropriateness of these redactions. *See Weil v. Dillon*, 109 P.3d 127, (2005) ("While the trial court is vested with wide discretion to control the discovery process, we hold that the trial court in this case abused its discretion when it read Johnson to require Weil to authorize blanket disclosure of medical records without first determining the extent that the records requested were related to Weil's injuries and damages claimed.[4] If Dillon Companies narrows its request and makes a showing that the records requested were related to the injuries and damages complained of in the current litigation, then the court in its discretion could direct discovery to those medical records related to the cause and extent of the injuries and damages claimed and protect records that are wholly unrelated to Weil's current claims. In sum, records related to the cause and extent of the specific injuries and damages claimed by Weil are discoverable and are to be disclosed to Dillon Companies, however, Dillon Companies is not entitled to Weil's medical history for his generic, garden variety, claims of pain and suffering and loss of quality of life.")

· Please explain your basis for asserting that any physician-patient privilege related to Mr. Harper's circulatory system has been waived.

With regard to your reference to Mr. Harper's neck and low back, Mr. Harper is not asserting any claim to damages arising from issues related to his neck and low back. The only injury for which Mr. Harper is pursuing damages relates to his brachial plexus stretch injury affecting his left shoulder and extremity.

As to the records related to Dr. Dean, we maintain that the redactions set forth therein are appropriately logged. We did not provide Dr. Dean's contact information because he is retired, closed his practice, and we could not get in touch with him further. Please see our paralegal Brittany Freeman's email to you on June 7, 2024, subject line: "Donald Harper v. Starbucks Corporation – Defendant's First Supplemental Expert Disclosures" regarding the same. Moreover, these records are more than six years before this incident. There is no evidence of ulnar nerve symptoms, no diagnosis, no physical exam findings, and no diagnosis in 2013 that were inconsistent with ulnar nerve involvement. Furthermore, we disclosed records from Dr. Dean in Plaintiff's Initial 26(a)(1) Disclosures, which was directly related to the injury caused by Defendant. GVNR 4 was clearly disclosed prior to the visit and summarized the pertinent portions. At that time of disclosure, it did not seem relevant or proportional to obtain the record in light of the fact that Dr. Dean considered this previously when evaluating Mr. Harper for the injuries sustained due to the subject incident. On Defendant's part, you never indicated that you disagreed otherwise until very late in discovery, at which point, Plaintiff's counsel compromised and obtained the record. If this had been a critical concern to you, the Defendant should have raised this far sooner than at this late stage. GVNR 11 was previously disclosed without redactions at GVNR 4. *See Plaintiff's Initial 26(a)(1) Disclosures)*.

In response to your comments regarding Mr. Harper's left shoulder and partial thickness tear in 2013 and any "significant failure to mitigate," the information contained in the most recent supplement is not new information. Mr. Harper's left shoulder issues were disclosed in records disclosed for years throughout the life of this case, and Dr. Luker's deposition taken on July 30, 2024, discussed this condition as well.

We do not understand your comments regarding Mr. Harper's cervical fusion. This is also an issue that has been known for years throughout the life of the case. It was disclosed in the imaging records, and also discussed at Dr. Delarosa's deposition, which was taken on June 6, 2024. On page 38 of this deposition, Dr. Delarosa admits that injuries at C-5/6 do not correlate with any ulnar nerve problem, and further testifies that you would not expect to see any numbness or paresthesia of his pinky finger correlating with any injury to the C-5/6 levels. The prior cervical fusion was also discussed in the depositions taken of Dr. Hehmann and Dr. Luker. The Defendant knew about any relevance/possible relevance of Mr. Harper's prior cervical fusion, as each of Mr. Harper's treating providers who have been deposed have been asked about it.  The assumption that Mr. Harper had "neck issues ongoing since the 90's"—is unsupported by the voluminous medical treatment records provided.

With regard to the issue related to Mr. Harper's fall off the roof—the Defendant has been aware of this incident *at least since* Mr. Harper's deposition, which was taken on November 14, 2023. This is not new information disclosed for the first time in the last set of supplemental disclosures. On that same note, we fail to see why the loss of consciousness from his fall from the roof in 2012 has any relevance to the claims and defenses, or the allegations the Defendant makes with regard to the last supplemental set of records.

As to the reference to any motor vehicle collision that Mr. Harper has been in previously, he recalled at least one during his deposition, which he testified to on November 14, 2023. This is also not new information.  There is no other available evidence or information within our possession, custody, or control on this issue, nor do we have any reason to believe that any other collision is related to Mr. Harper's conditions at issue.

Regarding the disclosure of the last set of records, to my understanding, after mediation failed in this matter, the Defendant requested expanded discovery, including requesting depositions of treating medical providers and expanded production of records for the first time, back on June 13, 2024. My understanding is that Plaintiff's counsel, in the spirit of compromise, agreed to permit the late-requested depositions of Mr. Harper's treating physicians outside of the discovery cutoff and to obtain additional records to avoid litigating the issue; not because we ever agreed that any such digging was proportional to nor appropriate to the needs of the case. The same is true with the agreement to obtain any remaining missing records via subpoena. We finally received all remaining records requested pursuant to subpoena and will disclose within the next week.

As to your statements that Mr. Harper is a "terrible historian," possession, custody, and control of records is limited to our ability to obtain any such records. We cannot obtain any records for Mr. Harper from a provider of whom he cannot remember. We have gone above and beyond in obtaining and providing records that we believe are not proportional to the needs of the case (e.g., records older than 5 years prior to the date of loss) to provide as comprehensive of a history as possible. We have never intentionally withheld any information or records that our client knew about, and have undergone extensive efforts, spending

countless hours searching for any record we may be able to obtain, and chasing down rabbit trails in records to ascertain that we have obtained the universe of all records available and potentially relevant.

As to your comments about duties, you are correct that the plaintiff has a duty to obtain and produce all relevant records and information subject to the proportionality factors set forth in C.R.C.P. 26(a)(1). To that end, the Defendant likewise has an obligation to timely review records produced, request depositions of treating medical providers, and timely raise any issue with any supplementation of records it believes are missing, all of which could have and should have been done well before taking Mr. Harper's deposition and disclosing expert reports. The law requires parties to raise discovery disputes within the discovery cut-off, which we believe was certainly possible here. *See Hanks v. Aminokit Laboratories, Inc.*, Civil Action No. 17-cv-01108-RM-MJW (D. Colo. Jan. 25, 2018).

Finally, to respond to your statement that our last supplemental production of records puts the entire case "in disarray," as demonstrated above, we respectfully disagree.

On Fri, Mar 28, 2025 at 9:51 AM Amy Rogers <anr@denvertrial.com> wrote:

Hi Andrew, yes, I am working on responding and will be in touch with you soon! Sorry for the delay--we have a trial starting on Monday but it is my priority to get you a response before then. Thanks for your understanding.

On Fri, Mar 28, 2025 at 9:44 AM Andrew Garnett <andrew.garnett@garnettlegalgroup.com> wrote:

Amy,

Just wanted to circle back on this.

Can you please provide a response?

Thank you,

Andrew

**Andrew P. Garnett**

*Managing Partner*

**Garnett Powell Maximon Barlow & Farbes**

1125 17th Street, Suite 2200

Denver, CO 80202

tel: 720.987.3268

*Pronouns: he/his/him*

https://www.garnettlegalgroup.com/

***When Trial Experience Matters.***



**From:** Andrew Garnett
**Sent:** Wednesday, March 26, 2025 12:03 PM
**To:** Amy Rogers <anr@denvertrial.com>
**Cc:** Sean Dormer <smd@denvertrial.com>; Rob Barlow <rob.barlow@garnettlegalgroup.com>; Brittany Freeman <bef@denvertrial.com>; Ella Nelson <ekn@denvertrial.com>; HarperZ8821249@denvertrial.filevineapp.com
**Subject:** Re: Harper v. Starbucks - Discovery Conferral


Thanks, Amy. I appreciate the update.


Andrew


On Mar 26, 2025, at 12:54 PM, Amy Rogers <anr@denvertrial.com> wrote:


Hi Andrew,


Just touching base to let you know we have been reviewing your discovery questions and I hope to have a substantive response to you by end of day tomorrow. Thank you,


On Tue, Mar 18, 2025 at 4:52 PM Sean Dormer <smd@denvertrial.com> wrote:

Hi Andrew,


No worries at all about the time you took to send this, and thanks for for both the detail and your patience as we review it.


I've sent my thoughts and review to Amy, who's going to check into a couple of things and then kick out our response. She and I have a two week trial before Judge Wang in D.Colo. (Denver) starting 3/31. Actually against Taylor Anderson -- did you guys used to work there? Anyway, we're doing our best to prioritize this as well and not let anything fall through the cracks. Further prodding is welcome, and we appreciate your patience in the meantime.


-Sean

**NOTICE:** If you weren't supposed to get this email, please let me know, and then please delete it and don't read it. If you already read it, please forget it. It's probably supposed to be private. Sorry for accidentally sending it to you, and thanks for being human and not dragging me for my mistake!

On Fri, Mar 7, 2025 at 11:57 AM Andrew Garnett <andrew.garnett@ garnettlegalgroup.com> wrote:

> Sean,
>
> Our apologies for the delay in sending this follow up. Thanks for making the time for our preliminary conferral call in February.
>
> Regarding the subpoenas, we have not received any additional document productions since our call. Have you received any additional documents? We are hoping we can get finality on those issues before we raise anything with the Court, so we have been hoping we would receive something and could incorporate any issues with that production in this dispute. Can you please provide an additional update on the subpoenas you have served?
>
> As it relates to the most recent supplemental production from Plaintiff, there are significant issues with the late disclosure of these documents. To preface, we're not sure how this could be considered Starbucks Corporation's fault in any regard. Plaintiff has an obligation to collect and produce relevant documents and discovery both pursuant to initial disclosure obligations and in response to discovery requests. Starbucks Corporation's requests for relevant and pertinent information from Plaintiff cannot be considered a burdensome request or somehow inviting this error from Plaintiff. By injecting his physical condition when he filed this lawsuit, Plaintiff had an obligation to collect these documents years earlier when he commenced this lawsuit and to timely produce them during the discovery period of this case. Instead, Plaintiff collected these medical records after his

doctors were deposed (based on the selective disclosure of some medical records) and after the close of discovery, just months before the trial.

At a high level, the significant prejudice that this late production presents to Starbucks is that Starbucks cannot use the documents to prepare for and strategize discovery, whether that be requests to submit to Plaintiff, which experts Starbucks should retain, how to question other experts (specifically, Plaintiff's treating physicians), and Starbucks was not able to use the critical documents produced so late in its dispositive motion. We appreciate that you disagree, but the prejudice to Starbucks is substantial.

We are not certain Starbucks has an obligation to outline the specific issues with the discovery failures, but we will provide that context for you per our discussion.

First, as it relates to the privilege log, Plaintiff's privilege log is deficient is significant ways. The categorical descriptions are single words or phrases. The specific privileges are not identified. We appreciate that your office uses a system where you can just log codes for generic body parts, but that does not comply with your obligations under Colorado law because you must "explain[ ] the privilege claim." *In re People in the Interest of J.P.*, 2023 CO 57, ¶ 28 (quoting *Alcon v. Spicer*, 113 P.3d 735, 742 (Colo. 2005)). To permit further evaluation (which we would submit that you are obligated to do regardless of the list we provide here to determine the true validity of the privilege claims your office has made) we would ask that you review the following privilege codes and supplement your privilege log to comply with the Colorado privilege law.

1. Leg
2. Hand
3. Back
4. Torso/Chest
5. Thoracic Spine
6. T Spine
7. Lumbar Spine
8. Circulatory

Second, as it relates to the specific documents produced in January 2025, months after the close of discovery, there are incredibly important pieces of information disclosed here that are relevant to the entire dispute and Starbucks Corporation's defense of Plaintiff's claims. The following is a non-exhaustive list of the critical discovery issues presented by Plaintiff's late disclosures.

1. Plaintiff is admittedly a terrible historian of his medical history. He cannot remember when things happen and having hard copy documentary evidence from his treating providers that establishes a timeline of injuries, a timeline for treatment, and specific detail of his numerous injuries that predate and postdate the Incident would have been monumental in permitting Starbucks to prepare for Mr. Harper's deposition, retain specific expert witnesses and determine potential actions of those experts, and then ultimately confront Mr. Harper's treating physicians with concrete evidence of Mr. Harper's significant injuries that predated the Incident.

2. Mr. Harper was seen by Dr. Dean on March 20, 2013. Much of this record is redacted (impermissibly so, Starbucks believes). But, what is not redacted is astonishing: "[Mr. Harper] is getting some tingling in his left arm intermittently." I don't think you need me to articulate how critical this statement is from Dr. Dean. This statement is incredibly important to Starbucks Corporation's defense of Mr. Harper's alleged injuries. Additionally important, this record demonstrates that Mr. Harper was being seen by Dr. Dean, a neurologist, BEFORE the Incident at Starbucks. You will recall that your office did not provide contact information from Dr. Dean and Starbucks did not depose Dr. Dean because the only record we had prior to this disclosure was from treatment Dr. Dean gave to Mr. Harper in February 2022. Had this single record been provided, it would have changed the entire course of Starbucks Corporation's defense in this case. Starbucks needed this record to provide to its expert. Starbucks needed to use this record to confront all of Plaintiff's treating providers and Starbucks needed this record to include in its Motion for Summary Judgment.

3. At GVNR 011 it states "P.P.Priv-Head," but the context of the sentence relates to a prior "pretty significant injury to his left shoulder."

4. At GVNR 034, it states that Mr. Harper has been in "several MVA."

5. Records produced from 10/29/2012 demonstrate a history of lumbar laminectomy.

6. In his 2012 ladder fall, Plaintiff injured his left shoulder, neck, and low back, *see* GVNR 043, the first two of which are injuries he claims here and the third is something that has lowered his quality of life, made him unable to walk (because lumbar spine innervates the legs), and has caused him to be unable to work.

7. Mr. Harper had impingement syndrome in his left shoulder and a partial thickness tear there in *2013*. *See* GVNR 072. This goes to a significant failure to mitigate, which we were unaware of until we received these records.

8. We also learned that, in Oct. 2012, Mr. Harper could not raise his left arm after the fall on the roof in late 2012 —"PATIENT CANNOT RAISE LEFT SHOULDER." GVNR 077.

9. Before we received these new records, we were under the impression that the spinal fusion occurred around 2010-2013. Now we have learned that he has had ongoing nerve issues at C5-7 for 20 years before this accident rather than 6-9 years.

10. The same March 20, 2013 record from Dr. Dean states that he had his Cervical Spine Surgery - C5-6-7 fusion with hardware in 2003. The record also states that Mr. Harper's 10/2/2012 fall resulted in a loss of consciousness. These are critical facts and provide a timeline pertinent to Plaintiff's claimed injuries that Starbucks was unable to address directly without these records.

11. We also learned why he had to have the C5-7 fusion in 2003—"His recollection is that he had severe neck pain and left arm difficulties at that time." GVNR 014. Left arm difficulties is Mr. Harper's predominant complaint in this lawsuit. To get to the point of having a fusion, patients typically fail conservative treatment for a number of years, progress to ESIs for diagnostic value, and ultimately have a fusion. This means that Mr. Harper's left arm and neck issues have been going on since the late 90's, most likely. We did not know any of this before the most recent untimely production.

We think a reasonable review of these recently produced medical records clearly demonstrates the importance they have to the seminal issues in this lawsuit, *i.e.* the legitimacy of Mr. Harper's extensive claimed injuries. Without them, Starbucks was forced to litigate this case with the proverbial one hand tied behind its back.

Please let us know what times next week would work for another conferral.

Thank you,

Andrew

**Andrew P. Garnett**

*Managing Partner*

**Garnett Powell Maximon Barlow & Farbes**

1125 17th Street, Suite 2200

Denver, CO 80202

tel: 720.987.3268

*Pronouns: he/his/him*

https://www.garnettlegalgroup.com/

**When Trial Experience Matters.**

<image001.jpg>

---

**From:** Sean Dormer <smd@denvertrial.com>
**Sent:** Wednesday, February 19, 2025 6:01 PM
**To:** Andrew Garnett <andrew.garnett@garnettlegalgroup.com>; Rob Barlow <rob.barlow@garnettlegalgroup.com>
**Cc:** Amy Rogers <anr@denvertrial.com>; Brittany Freeman <bef@denvertrial.com>; Ella Nelson <ekn@denvertrial.com>; HarperZ8821249@denvertrial.filevineapp.com
**Subject:** Harper v. Starbucks - Discovery Conferral

Andrew and Rob,

Thank you both again for your time today.

As promised, an update on status of subpoena responses is as follows:

- Returns of service are in ECF
- VA: last heard from Office of Chief Counsel on 2/10, indicating they would follow up again with records custodian and provide status update. We sent another follow-up request this morning after our call. We got a call back from OCC, and were informed that they accidentally sent everything out in paper (which we haven't received) but will instead be sending us an electronic version. Much of this is very likely going to be duplicative of records already disclosed, but subpoenaed just in case.
- Rocky Mtn. Ortho. and St. Mary's are both part of Intermountain Health now, so we've been in communication with a paralegal at Intermountain about subpoenas to both. On 2/11, we received Intermountain's demand for an "Attestation Regarding a Requested Use or Disclosure of Protected Health Information (PHI) Potentially Related to Reproductive Health Care" for both subpoenas. We provided that on 2/12, and followed up yesterday. Again, some of this may be duplicative, but again making sure.
- Canyon View: we've attempted follow-up calls on 2/10 and again today. Prior to sending the subpoena, we were given some inconsistent information as to where these records would be kept (by the ASC as opposed to the surgeon's practice). We also requested and recently received records from Community Hospital, on behalf of Western Orthopedics, aka Grand Valley Orthopedics (not clear about the interaction). These have an operative note in them with Canyon View's letterhead on it. It's possible Canyon View sees this subpoena as already satisfied, but we're continuing to follow up to make sure. The records we received from Community Hospital/Western Ortho/Grand Valley Ortho are unrelated to any left hand/arm/etc issues. They involve the thumb on the right side. We'll continue to follow up for these regardless.

The bigger issue you raised today was your belief that our most recent supplemental records production has somehow "put the entire case in disarray" or "destroy[ed] everything [Defendant has] done in the case [by way of discovery]." You said you believe the only appropriate remedy is something you described as "drastic and draconian," and you mentioned dismissal or partial dismissal (as to certain damages you didn't specify) as possible specific requests.

Obviously, all of this came as a bit of a shock to me, since I was under the impression that our most recent supplement consisted of largely irrelevant and privileged records, plus a few additional details about issues that have long-since been disclosed, simply going further back in time. My impression has been that we were doing our most recent digging (much further back into Mr. Harper's medical history than we believed necessary at the outset) as a compromise with Defendant and at Defendant's request. I just don't see how these new records change anything. And if I'd know that our reward for cooperatively compromising would be an attempt at punishing my client for doing so, I should probably have thought twice about allowing discussion of more discovery of any kind after the cutoff. On the other hand, as the court observed, we have plenty of time before this very simple trial with which to tie up loose ends, and I'm happy to do that in a reasonable and practical way that is fair to both sides, but also avoids undoing decisions made years in the past about how vigorously to pursue discovery in this case.

As I mentioned during our meeting, I'm happy to look at your position in more detail and try to understand where you're coming from, even on the core issue. Maybe there's an appropriate remedy; I don't know. And given the gravity of the allegations you plan to raise, I'd also like to see if we can narrow the dispute so as not to waste our time or the court's with issues that should be resolvable. If we do have that core dispute, distractions won't help anyone. With that in mind, please send me the following when you're able:

1. A list of the specific privilege log codes you take issue with on substance (*e.g.*, "hand," which you mentioned today and I'll review); and
2. A list of the pages or dates of service in the recently disclosed records that you believe provide new information that would have changed your discovery plan, along with an explanation of how and why it would have changed your discovery plan.

I want to stress the importance of the second point. You told me today I could obviously understand your position if I'd "just read the medical records." I respectfully disagree; I skimmed the new records today and didn't see anything in them that wasn't already readily apparent from prior disclosures or apparently immaterial. So, I need examples to better understand your position. You mentioned two today, though I didn't have the chance to write them down. I assume you have others in mind as well.


Thanks, Gentlemen, and always a pleasure to work with you (in or out of the "boxing ring").


-Sean


<~WRD0000.jpg>

**NOTICE:** If you weren't supposed to get this email, please let me know, and then please delete it and don't read it. If you already read it, please forget it. It's probably supposed to be private. Sorry for accidentally sending it to you, and thanks for being human and not dragging me for my mistake!


--

Sincerely,

Amy

--