IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Gordon P. Gallagher

Civil Action No. 21-cv-03295-GPG-KAS

DONALD HARPER,

    Plaintiff,

v.

STARBUCKS CORPORATION,

    Defendant.

# ORDER

Before the Court are Defendant's Motion to Exclude Expert Testimony Pursuant to Fed. R. Evid. 702 (D. 111) and Plaintiff's 702 Motion to Strike Improper Opinions by Defense-Retained Orthopedic Expert Matthew Delarosa, M.D. (D. 112).[1]

## I.   BACKGROUND

Plaintiff Donald Harper was struck around his left collarbone by the tip of an umbrella that blew off its stand while seated at a Starbucks café in Montrose, Colorado.[2] Plaintiff asserts that the umbrella strike caused injury, specifically to a nerve bundle in the shoulder called the brachial plexus. Starbucks counters that the umbrella strike did not cause lasting injury and that Plaintiff's later symptoms and treatment are a result of preexisting nerve and spinal injuries.

---

[1] The Court exercises its discretion to rule on these motions without awaiting reply briefs in view of the upcoming status conference. *See* D.C.COLO.LCivR 7.1(d) ("Nothing in this rule precludes a judicial officer from ruling on a motion at any time after it is filed.").

[2] The Court draws its background facts from its September 26, 2024 (D. 80) Order on Defendant Starbucks Corporation's Motion for Partial Summary Judgment and the Parties' related briefing (D. 75; D. 78; D. 79).

1

Starbucks seeks to exclude opinions of Michael Hehmann, M.D., regarding causation of Plaintiff's injuries and from testifying "in any way regarding" the brachial plexus (D. 111 at 13).

Plaintiff seeks to exclude opinions of Matthew Delarosa, M.D., related to the mechanism of injury (D. 112 at 9).

## II.   LEGAL STANDARD

Federal Rule of Evidence 702 addresses expert testimony and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

When considering the admissibility of expert testimony, "the district court generally must first determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion." *United States v. Nacchio*, 555 F.3d 1234 1241 (10th Cir. 2009) (en banc) (citing Fed. R. Evid. 702).  I must then engage in a two-prong analysis. I must ensure the testimony "1) has 'a reliable basis in the knowledge and experience of [the expert's] discipline,' and 2) is 'relevant to the task at hand.'"  *United States v. Chapman*, 839 F.3d 1232, 1237 (10th Cir. 2016) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 592 (1993)).

Rule "702 requires the district court to 'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'"  *Bill Barrett Corp. v. YMC Royalty Co*.,

918 F.3d 760, 770 (10th Cir. 2019) (per curiam).  Pursuant to *Kumho Tire*, expert testimony can be admitted on matters related to specialized knowledge under Rule 702, so long as it satisfies the test of reliability and relevance. 526 U.S. at 149.  "Expert testimony is properly admitted if the subject matter is closely related to a particular profession, business or science and is not within the common knowledge of the average layperson."  *United States v. Kunzman,* 54 F.3d 1522, 1530 (10th Cir. 1995).

Under Rule 702, courts must first decide whether the proffered expert is qualified "by knowledge, skill, experience, training, or education" to render an opinion.  *See* Fed. R. Evid. 702. Then "the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*."  *Nacchio*, 555 F.3d at 1241. "Where an expert testifies based on experience, the tribunal reviews the reliability of the testimony with reference to 'the nature of the issue, the expert's particular expertise, and the subject of the testimony.'"  *F & H Coatings, LLC v. Acosta*, 900 F.3d 1214, 1222 (10th Cir. 2018) (quoting *Kumho Tire*, 526 U.S. at 148–50).

Next, courts must decide whether the proffered expert's opinion is relevant; that is, whether it "will help the trier of fact to understand the evidence or to determine a fact in issue."  Rule 702(a).

### III.  ANALYSIS

#### A. Starbucks' Motion

Dr. Hehmann is a non-retained expert who was Plaintiff's examining and treating physician.  As such, he was not required to submit a formal expert report.  *See* Fed. R. Civ. P. 26(a)(2)(C).  Thus, Starbucks' arguments are mainly predicated on his deposition testimony.

3

Starbucks provides very limited portions of the transcript (D. 111-2), but Plaintiff helpfully provides the whole thing (D. 115-1; D. 115-2) (Hehmann Tr.).

In his testimony, Dr. Hehmann explained his standard medical methods for diagnosis and treatment as well as the methods he used in this case (Hehmann Tr. at 9:2-19). He explained the EMG nerve conduction studies he performed (*id*. at 11:13–12:14) and his diagnosis based on the results (*id*. at 12:15–16:5). Dr. Hehmann also explained how those results lead him to suspect a "brachial plexus-type stretch injury" such that he ordered MRI scans (*id*. at 21:16). He explained how the MRI scan results, while not definitive, helped him rule out other potential injuries that could be the cause of Plaintiff's reported symptoms (*id*. at 33:2–38:7). Dr. Hehmann also explained his background as a "general neurologist" and how he regularly treats patients with brachial plexus injuries despite not specializing in that area (*id*. at 28:25).

First, Starbucks argues that Dr. Hehmann's opinions are based on insufficient evidence because he had not reviewed all of Plaintiff's medical records produced in the case (D. 111 at 6–10). It asserts that the "lack of medical records and or a detailed history left significant gaps in Dr. Hehmann's knowledge" undermining his opinions on causation (*id*. at 7). Second, it argues that Dr. Hehmann's opinions are not the product of reliable methodology because it is merely *ipse dixit* and causation is not a determination he generally makes in practice (*id*. at 10–11). Finally, Starbucks argues that Dr. Hehmann is unqualified because he admitted he is not a "brachial plexus expert" (*id*. at 12).

Starbucks arguments are at odds with Dr. Hehmann's detailed testimony. Dr. Hehmann testified that he was aware of and noted some of Plaintiff's prior neck issues and treatment in relation to the MRI (Hehmann Tr. at 32:7–33:1). During his deposition, Dr. Hehmann was

4

provided with additional records and explained that they would not have been helpful to his treatment analysis (*id*. at 200:24–201:6). Ultimately, because Dr. Hehmann's opinions are supported by sufficient facts, any additional information he did not consider is fodder for cross examination that goes to the weight given such evidence, not its admissibility. Fed. R. Evid. 702 advisory committee's note to 2023 amendment ("For example, if the court finds it more likely than not that an expert has a sufficient basis to support an opinion, the fact that the expert has not read every single study that exists will raise a question of weight and not admissibility."). Dr. Hehmann's testimony includes an explanation of how he reached his conclusions regarding causation through consideration of objective medical test results and applying his relevant medical knowledge (*e.g., id*. at 101:12-16). Although he humbly admits to not being an "expert"[3] specifically on the brachial plexus, Dr. Hehmann has relevant specialized knowledge and experience to render the opinions at issue from his work as a neurologist treating brachial plexus injuries on the work he performed and the conclusions that he drew from it. *Sprague v. State Farm Fire & Cas. Co.*, No. 1:23-CV-02523-SBP, 2025 WL 1712913, at *26 (D. Colo. June 18, 2025) (quoting *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001)) ("[A]s long as an expert stays within the reasonable confines of his subject area, our case law establishes a lack of specialization does not affect the admissibility of the expert opinion, but only its weight."). Plaintiff has shown by a preponderance of evidence that Dr. Hehmann's opinion testimony meets the requirements of Rule 702, and the Court will deny Starbucks' motion.

---

[3] It is apparent from context that Dr. Hehmann uses the term "expert" in reference to a medical specialty, rather than as a legal term of art consistent with Rule 702 (Hehmann Tr. at 27:1–30:23).

**B. Plaintiff's Motion**

Plaintiff challenges the opinions of Dr. Delarosa from a single paragraph of his supplementary report. It states in full:

> Finally, in addition to the anatomic impossibility of a blunt soft-tissue trauma to the neck sparing the upper and middle trunk of the brachial plexus and affecting the lower trunk in isolation, this new documentation further solidifies my stance that the brachial plexus is in fact not the culprit of his neurogenic pain and therefore the umbrella incident is unrelated to Mr. Harper's current condition. Mr. Harper's claim that the umbrella hitting him above his clavicle, not piercing the skin, sparing the entire top two thirds of the brachial plexus that is in the way, and still having enough force to injury the lower third of the plexus (which imaging refutes) is impossible. This is the equivalent of digging a hole from the bottom up without disturbing the top 2/3rd of soil. It cannot happen.

(D. 112-1 at 5). Plaintiff first asserts that these opinions lack a factual basis and a reliable methodology (D. 112 at 4–6).

In response, Starbucks does not rely to the "feel[ing]" that Dr. Delarosa expressed in the report as basis for his opinion and instead refers to his deposition testimony. Specifically, he testified:

> Q: Why . . . do the other levels of the brachial plexus have to be involved?
>
> A: The reason is the upper and middle trunk are both slightly superior and anterior to the lower trunk. It's sort of a stepwise progression down and posteriorly. In order to get the angle to damage the lower trunk in isolation and not cause any injury to the upper middle trunk, you would have to go through the clavicle from the front or through the scapula through the back. So there's [a] bony protection on either side of this. The only route to the lower trunk is through the upper and middle trunk.

(D. 112-5 at 11; Delarosa Tr. at 35:7-18). This provides a factual basis for the challenged opinions and explains his reasoning from the stated anatomical facts. But it is unclear whether these

anatomical facts and the related conclusions are relevant to the facts of the case such that they could help the factfinder.

Plaintiff argues that it does not assert a the he was injured directly through blunt force trauma to the brachial plexus and, instead, asserts that he has only asserted a "brachial plexus *stretch* injury—that the bottom portion of his brachial plexus was stretched (injured) when he got hit by the umbrella in the neck and clavicle area" (D. 112 at 2). This is, indeed, the theory advocated at least by Dr. Hehmann (Hehmann Tr. at 21:15-16) ("this is probably a brachial . . . brachial plexus-type stretch injury"). Accordingly, Plaintiff asserts that these opinions are not a good fit to the facts of the case and would be likely to confuse a jury (D. 112 at 6–8).

In response, Starbucks argues that the descriptions of the umbrella strike by Plaintiff are consistent with an injury caused by blunt force trauma. It notes testimony or treatment notes wherein Plaintiff stated he was variously "impaled," "struck," "poked," and "harpooned" by the umbrella's sharp tine (D. 114 at 2–4). Starbucks argues that the record evidence is inconsistent with the alleged stretch injury theory and, therefore, it should be able to present its refutation of a blunt force trauma injury (*id*. at 4–7). It asserts that there is "zero evidence" in the record that Plaintiff made a reflexive movement in relation to the umbrella strike that could lead to a stretch injury (*id*. at 6). Starbucks is correct at least insofar as the record concerning the motions is concerned. It contains only a short excerpt of Plaintiff's deposition provided by Starbucks (D. 114-2).

The Court finds that the admissibility of Dr. Delarosa's challenged opinions cannot be readily determined in advance of trial. The admissibility of the challenged opinions turns on the theories presented by Plaintiff and the facts adduced at trial. Accordingly, the Court holds in

7

abeyance Plaintiff's motion. *Slavin v. Garrison Prop. & Cas. Ins. Co.*, No. 14-CV-01839-LTB-KMT, 2017 WL 2928030, at *5 (D. Colo. July 10, 2017), *aff'd*, 805 F. App'x 561 (10th Cir. 2020) ("I hold in abeyance and defer ruling on the admissibility of any causation evidence until such time as it is proffered at trial.").

## IV.   CONCLUSION

For the forgoing reasons, Defendant's Motion to Exclude Expert Testimony Pursuant to Fed. R. Evid. 702 (D. 111) is DENIED and Plaintiff's 702 Motion to Strike Improper Opinions by Defense-Retained Orthopedic Expert Matthew Delarosa, M.D. (D. 112) is HELD IN ABEYANCE.

DATED September 24, 2025.

BY THE COURT:

Gordon P. Gallagher
United States District Judge